UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

_____

Write the full name of each plaintiff.

-against-

_____

_____

Write the full name of each defendant. The names listed
above must be identical to those contained in Section I.

_____CV_____
(Include case number if one has been
assigned)

Do you want a jury trial?

☐ Yes      ☐ No

# EMPLOYMENT DISCRIMINATION COMPLAINT

---

### NOTICE

The public can access electronic court files. For privacy and security reasons, papers filed with
the court should therefore *not* contain: an individual's full social security number or full birth
date; the full name of a person known to be a minor; or a complete financial account number. A
filing may include *only*: the last four digits of a social security number; the year of an individual's
birth; a minor's initials; and the last four digits of a financial account number. See Federal Rule
of Civil Procedure 5.2.

---

## I. PARTIES

### A. Plaintiff Information

Provide the following information for each plaintiff named in the complaint. Attach additional pages if needed.

| | | |
|---|---|---|
| First Name | Middle Initial | Last Name |

Street Address

| | | |
|---|---|---|
| County, City | State | Zip Code |

| | |
|---|---|
| Telephone Number | Email Address (if available) |

### B. Defendant Information

To the best of your ability, provide addresses where each defendant may be served. If the correct information is not provided, it could delay or prevent service of the complaint on the defendant. Make sure that the defendants listed below are the same as those listed in the caption. (Proper defendants under employment discrimination statutes are usually employers, labor organizations, or employment agencies.) Attach additional pages if needed.

Defendant 1:

Name

Address where defendant may be served

| | | |
|---|---|---|
| County, City | State | Zip Code |

Defendant 2:

Name

Address where defendant may be served

| | | |
|---|---|---|
| County, City | State | Zip Code |

Defendant 3:

| | |
|---|---|
| Name | |

| |
|---|
| Address where defendant may be served |

| County, City | State | Zip Code |
|---|---|---|

## II.     PLACE OF EMPLOYMENT

The address at which I was employed or sought employment by the defendant(s) is:

| |
|---|
| Name |

| |
|---|
| Address |

| County, City | State | Zip Code |
|---|---|---|

## III.     CAUSE OF ACTION

### A.  Federal Claims

This employment discrimination lawsuit is brought under (check only the options below that apply in your case):

☐ **Title VII of the Civil Rights Act of 1964**, 42 U.S.C. §§ 2000e to 2000e-17, for employment discrimination on the basis of race, color, religion, sex, or national origin

The defendant discriminated against me because of my (check only those that apply and explain):

☐ race: _____

☐ color: _____

☐ religion: _____

☐ sex: _____

☐ national origin: _____

☐ **42 U.S.C. § 1981**, for intentional employment discrimination on the basis of race

    My race is: _____

☐ **Age Discrimination in Employment Act of 1967**, 29 U.S.C. §§ 621 to 634, for employment discrimination on the basis of age (40 or older)

    I was born in the year: _____

☐ **Rehabilitation Act of 1973**, 29 U.S.C. §§ 701 to 796, for employment discrimination on the basis of a disability by an employer that constitutes a program or activity receiving federal financial assistance

    My disability or perceived disability is: _____

☐ **Americans with Disabilities Act of 1990**, 42 U.S.C. §§ 12101 to 12213, for employment discrimination on the basis of a disability

    My disability or perceived disability is: _____

☐ **Family and Medical Leave Act of 1993**, 29 U.S.C. §§ 2601 to 2654, for employment discrimination on the basis of leave for qualified medical or family reasons

## B. Other Claims

In addition to my federal claims listed above, I assert claims under:

☐ **New York State Human Rights Law**, N.Y. Exec. Law §§ 290 to 297, for employment discrimination on the basis of age, race, creed, color, national origin, sexual orientation, military status, sex, disability, predisposing genetic characteristics, marital status

☐ **New York City Human Rights Law**, N.Y. City Admin. Code §§ 8-101 to 131, for employment discrimination on the basis of actual or perceived age, race, creed, color, national origin, gender, disability, marital status, partnership status, sexual orientation, alienage, citizenship status

☐ Other (may include other relevant federal, state, city, or county law):

_____

## IV.   STATEMENT OF CLAIM

### A.  Adverse Employment Action

The defendant or defendants in this case took the following adverse employment actions against me (check only those that apply):

☐   did not hire me

☐   terminated my employment

☐   did not promote me

☐   did not accommodate my disability

☐   provided me with terms and conditions of employment different from those of similar employees

☐   retaliated against me

☐   harassed me or created a hostile work environment

☐   other (specify): _____

_____

### B.  Facts

State here the facts that support your claim. Attach additional pages if needed. You should explain what actions defendants took (or failed to take) *because of* your protected characteristic, such as your race, disability, age, or religion. Include times and locations, if possible. State whether defendants are continuing to commit these acts against you.

_____

_____

_____

_____

_____

_____

As additional support for your claim, you may attach any charge of discrimination that you filed with the U.S. Equal Employment Opportunity Commission, the New York State Division of Human Rights, the New York City Commission on Human Rights, or any other government agency.

## V. ADMINISTRATIVE PROCEDURES

For most claims under the federal employment discrimination statutes, before filing a lawsuit, you must first file a charge with the U.S. Equal Employment Opportunity Commission (EEOC) and receive a Notice of Right to Sue.

Did you file a charge of discrimination against the defendant(s) with the EEOC or any other government agency?

☐ Yes (Please attach a copy of the charge to this complaint.)

When did you file your charge? _____

☐ No

Have you received a Notice of Right to Sue from the EEOC?

☐ Yes (Please attach a copy of the Notice of Right to Sue.)

What is the date on the Notice? _____

When did you receive the Notice? _____

☐ No

## VI. RELIEF

The relief I want the court to order is (check only those that apply):

☐ direct the defendant to hire me

☐ direct the defendant to re-employ me

☐ direct the defendant to promote me

☐ direct the defendant to reasonably accommodate my religion

☐ direct the defendant to reasonably accommodate my disability

☐ direct the defendant to (specify) (if you believe you are entitled to money damages, explain that here)

_____

_____

_____

_____

# VII. PLAINTIFF'S CERTIFICATION

By signing below, I certify to the best of my knowledge, information, and belief that: (1) the complaint is not being presented for an improper purpose (such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation); (2) the claims are supported by existing law or by a nonfrivolous argument to change existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Federal Rule of Civil Procedure 11.

I agree to notify the Clerk's Office in writing of any changes to my mailing address. I understand that my failure to keep a current address on file with the Clerk's Office may result in the dismissal of my case.

Each Plaintiff must sign and date the complaint. Attach additional pages if necessary. If seeking to proceed without prepayment of fees, each plaintiff must also submit an IFP application.

| March 12, 2024 | |
|---|---|
| Dated | Plaintiff's Signature |
| Andy | Monplaisir |
| First Name          Middle Initial | Last Name |
| 224 W 35th Street, STE 500 | |
| Street Address | |
| New York | New York          10001 |
| County, City | State          Zip Code |
| 407-433-1485 | afm08c@gmail.com |
| Telephone Number | Email Address (if available) |

I have read the attached Pro Se (Nonprisoner) Consent to Receive Documents Electronically:

☒ Yes     ☐ No

If you do consent to receive documents electronically, submit the completed form with your complaint. If you do not consent, please do not attach the form.



**United States District Court**
**Southern District of New York**

# Pro Se (Nonprisoner) Consent to Receive Documents Electronically

Parties who are not represented by an attorney and are not currently incarcerated may choose to receive documents in their cases electronically (by e-mail) instead of by regular mail. Receiving documents by regular mail is still an option, but if you would rather receive them only electronically, you must do the following:

1.  Sign up for a PACER login and password by contacting PACER[1] at www.pacer.uscourts.gov or 1-800-676-6856;

2.  Complete and sign this form.

If you consent to receive documents electronically, you will receive a Notice of Electronic Filing by e-mail each time a document is filed in your case. After receiving the notice, you are permitted one "free look" at the document by clicking on the hyperlinked document number in the e-mail.[2] Once you click the hyperlink and access the document, you may not be able to access the document for free again. After 15 days, the hyperlink will no longer provide free access. Any time that the hyperlink is accessed after the first "free look" or the 15 days, you will be asked for a PACER login and may be charged to view the document. For this reason, *you should print or save the document during the "free look" to avoid future charges.*

## IMPORTANT NOTICE

Under Rule 5 of the Federal Rules of Civil Procedure, Local Civil Rule 5.2, and the Court's Electronic Case Filing Rules & Instructions, documents may be served by electronic means. If you register for electronic service:

1.  You will no longer receive documents in the mail;

2.  If you do not view and download your documents during your "free look" and within 15 days of when the court sends the e-mail notice, you will be charged for looking at the documents;

3.  This service does *not* allow you to electronically file your documents;

4.  It will be your duty to regularly review the docket sheet of the case.[3]

---

[1] Public Access to Court Electronic Records (PACER) (www.pacer.uscourts.gov) is an electronic public access service that allows users to obtain case and docket information from federal appellate, district, and bankruptcy courts, and the PACER Case Locator over the internet.

[2] You must review the Court's actual order, decree, or judgment and not rely on the description in the email notice alone. *See* ECF Rule 4.3

[3] The docket sheet is the official record of all filings in a case. You can view the docket sheet, including images of electronically filed documents, using PACER or you can use one of the public access computers available in the Clerk's Office at the Court.

# CONSENT TO ELECTRONIC SERVICE

I hereby consent to receive electronic service of notices and documents in my case(s) listed below. I affirm that:

1. I have regular access to my e-mail account and to the internet and will check regularly for Notices of Electronic Filing;

2. I have established a PACER account;

3. I understand that electronic service is service under Rule 5 of the Federal Rules of Civil Procedure and Rule 5.2 of the Local Civil Rules, and that I will no longer receive paper copies of case filings, including motions, decisions, orders, and other documents;

4. I will promptly notify the Court if there is any change in my personal data, such as name, address, or e-mail address, or if I wish to cancel this consent to electronic service;

5. I understand that I must regularly review the docket sheet of my case so that I do not miss a filing; and

6. I understand that this consent applies only to the cases listed below and that if I file additional cases in which I would like to receive electronic service of notices of documents, I must file consent forms for those cases.

**Civil case(s) filed in the Southern District of New York:**

**Note:** This consent will apply to all cases that you have filed in this court, so please list all of your pending and terminated cases. For each case, include the case name and docket number (for example, John Doe v. New City, 10-CV-01234).

_____

_____

Monplaisir, Andy

Name (Last, First, MI)

224 W 35th Street   StE 500   New York   NY   10001

Address                 City                 State                 Zip Code

407-433-1485                        afm08c@gmail.com

Telephone Number                  E-mail Address

March 12, 2024                     *Andy Monpl...*

Date                               Signature

**Return completed form to:**

Pro Se Intake Unit (Room 200)
500 Pearl Street
New York, NY 10007

<u>Statement of Facts</u>

From October 5, 2015, until December 15, 2022, I was employed by the City of New York; from July 10, 2017, until December 15, 2022, I was employed by the New York City Department of Finance ("DOF") as a Senior Software Developer. Throughout this time, I was a "competitive class employee" defined under Section 75 of the Civil Service Law.

In May 2019, after the retirement of my previous manager, I was placed to be managed by Sandip Desai, Indian, Computer Systems Manager, where he managed two people, Rizwan Qadri, Pakistani, Computer Systems Manager and myself, Black, Senior Software Developer.

Sandip Desai was managed by Matthew Visscher, White, Director.

Matthew Visscher was managed by Robert Paskus, White, Assistant Commissioner.

During my time as a public employee, I was the **only** black software developer on the ACRIS team of about 12 people.

From March 2020 through August 2021, the entire ACRIS team were permitted to perform work remotely pursuant to the teleworking policy adopted by the City of New York in response to the COVID-19 pandemic.

The Family and Medical Leave Act **(FMLA)** is a federal law that provides eligible employees with up to 12 weeks of **unpaid job-protected leave** during a 12-month period.

On or about March 4th 2021, I submitted a Family and Medical Leave Act (FMLA) form stating that I may take federal job protected FMLA leave anywhere from March 19, 2021, to March 19, 2022.

New York State Paid Family Leave **(PFL)** provides up to 12 weeks of **paid job-protected leave** at 67 percent of your average weekly salary during a 12-month period.

On or about March 4th, 2021, I submitted my Paid Family Leave form (PFL) stating that I may take state job protected (PFL) leave anywhere from March 19, 2021, to March 19, 2022.

Both forms were submitted to Michelle Stevens in the Department of Finance's Time Leave Administration Department on the same day.

My daughter was born on **March 28, 2021.**

FMLA and PFL may run concurrently.

My Paid Family Leave (PFL) started on **November 3, 2021**, and ended on January 22, 2022.

My unpaid Family Medical Leave (FMLA) started on **December 27, 2021**, and ended on March 18, 2022.

Employees have the right to take FMLA leave all at once, or separate periods of time or by reducing the time they work each day or week.

I returned to the office on February 3, 2022.

My FMLA leave was subsequently still active upon my return to the office on February 3, 2022.

As a member of the New York City DC-37 Local 2627 union, I was also eligible for additional unpaid childcare leave.

The city ended its teleworking policy in September 2021.

I have been constantly getting harassed by Sandip Desai since he became my new manager after Dave Schoen retired in 2019; he has constantly been reporting me for possible violations with DOF; This feeling that I was always doing something wrong brought me extreme anxiety and alienated me from the entire ACRIS team.

Per Policy, I was required to be in the office at DOF by 9:30am, there was a "7-minute grace period" and thereafter, any time after 9:37am would be considered, "late." Once late, the policy states it either comes out of my Annual Leave or it's considered Leave Without Pay (LWOP).

I have never requested or received **overtime pay** in my seven years of being a city employee even though there were times this would have been warranted.

Prior to going on PFL and FMLA leave, I had a clean disciplinary record during my entire 7-year tenure with the City of New York.

On July 21st, 2022, Sandip Desai conducted a voluntary interview about my employment with the City of New York. (**This audio recording will be submitted as evidence to the court**).

I have a Master of Science Degree from New York University (NYU) in Computer Science. I also have a Master of Science Degree in Geographic Information Science from The Florida State University (FSU).

Sandip Desai has a Bachelor of Arts degree in Psychology and does not have an advanced degree.

***Please find my below timeline of Racial Discrimination, DOF management workplace harassment and DOF's retaliation to both FMLA and PFA Leave***

1. **December 2019**- There was an instance where I walked over to Ray Mak's, **Chinese**, ACRIS team member, desk to ask a testing question and while he was demonstrating, he had his Microsoft Teams application up, I saw a group chat titled, "**Andy not invited chat.**"

2. **January 29, 2020**- Almost immediately after becoming my manager Sandip Desai started to insinuate that I was a liar and rejected a sick day leave request.

3. **On or about February 2020**- Lamont Patterson, **black employee on another team**, was coming in earlier than 8:00am to make edits to the Digital Tax Map.

4. In conversation with Sandip Desai on how our team could accommodate his earlier schedule, Sandip questioned why he wanted to be in so early and said, "he (Lamont Patterson) just wanted to charge for overtime."

5. Declaring that Lamont Patterson was attempting to beat the system.

6. Sandip Desai would often question the motives of the black employees he had to interact with.

7. Sandip Desai's own work schedule involved him coming in prior to 8:00 a.m.

8. **September 2020-** While in my final year obtaining my Master in Computer Science from NYU in 2020, As a capstone and at the request of my Graduate advisor, I went to my manager Sandip Desai, to request approval to use my current employment as a class credit and was met with apprehension as to whether I was following DOF policy by being a student.

9. Up until that point, Sandip was not aware that I was a part-time student at NYU for the past 4 years, because my work assignments were being completed on time.

10. I was fearful that he had the power to not approve my capstone which would affect me from graduating.

11. I was hired as a freelancer by KFORCE in April 2021 to work remotely after the birth of my daughter.

12. Based on how my manager responded to my request as a part time student and his treatment towards me prior, I was fearful that disclosing my freelancing effort would lead to a reinforced hostile environment for myself.

13. I had previously been granted approval for outside self-employment with my previous manager, Dave Schoen, while at the Department of Finance.

14. I was not subjected to the level of harassment with my previous manager that I had to endure with Sandip Desai.

15. I was awarded a "Customer Service Award," from my previous manager.

16. **June 2021**- Ray Mak, **Chinese**, a ACRIS team member, asked me verbatim via Microsoft Teams "*are you working on bullshit?*" insinuating that the work I was completing for DOF was irrelevant.

17. I told him that he should "leave me alone."

18. **September 2021**- After the city ended its teleworking policy, I provided the Equal Opportunity Office and my manager, Sandip Desai, with a recommendation from a medical professional, stating that working in the office will provide me with a great deal of anxiety.

19. This anxiety was heightened due to having a 6-month old at home and concerns of COVID-19 exposure that I could expose her to by having to be in the office especially as the winter months approached.

20. My doctor recommended that where possible reasonable accommodation be provided to me.

21. The request was **<u>denied</u>**, and no reasonable accommodation was provided to me by the Equal Employment Opportunity office.

22. The only question that the DOF's EEO office had in relation to my reasonable accommodation request was, "*are you vaccinated*?"

23. After responding, "**no**" the call ended, and I then received an email stating that my request for reasonable accommodation was denied.

24. Per the EEO's reasonable accommodation policy, accommodations are considered reasonable if they do not create an undue hardship or a direct threat to the city.

25. **Abnormal ECG that was reported on a September 19, 2021** showcasing my emergency medical concerns during this period.



26. I continued to go into the office daily despite having a 6-month-old at home with a vulnerable immune system.

27. **November 2021- January 2022**- I went on my Paid Family Leave on November 3rd to January 22nd 2022.

28. **December 27, 2021**- My FMLA leave began running concurrently.

29. During my PFL and FMLA leave, I was asked to complete work assignments for the city from management that were unpaid.

30. I obliged out of fear of retaliation when I returned.

31. I performed these services for the city even though there was no legal requirement for me to perform such services.

32. I informed the team that I would be returning to the office on February 3, 2022, because another ACRIS team member, Irina Voloshina, Russian, white female, also was out of the office on an extended leave.

33. My PFL leave ended on January 22, 2022.

34. The remaining workdays while out of the office were designated as **Leave Without Pay** under FMLA.

35. **February 3, 2022**- My first day back into the office.

36. **February 9, 2022**- two ACRIS team members, Rizwan Qadri, **Pakistani** and Satyanarayan Chaluvadi, **Indian** were allowed to work from home.

37. Other employees were granted hybrid or fully work from home accommodations by management that was supposed to be **on the "hush."**

38. It was the belief of upper management that the work of our team could be done remotely, and they did not agree with the city's return to office policy.

39. **February 11, 2022**- Matthew Visscher sent a calendar invite called "My Future Plans" to the entire ACRIS team.

40. This meeting was attended by the majority of the ACRIS team.

41. In this meeting, Matthew Visscher told the team that the reason for his departure was outside employment that brought him great financial gain and he wanted to take the opportunity to follow this path.

42. Matthew, after the meeting informing us that he was leaving, then decided to remain employed with the Department of Finance.

43. He was instead granted multiple work from home accommodations.

44. **February 22, 2022**- I had a conversation with Matthew Visscher, informing him that I was thinking about taking additional childcare leave but that I didn't know my options to do so. I sent him a message on teams and then we spoke over the phone.

45. I texted my wife after our conversation letting her know how it went.



46. In my conversation on the phone with Matthew Visscher, he stated that if I did take the additional leave that there was chance that Robert Paskus, Assistant Commissioner, may ask me to "help out."

47. **February 2022**- after the discussion with Matthew that I was considering taking additional childcare leave after PFL/FMLA, the harassment from Sandip Desai "turned" up.

48. As soon as it was disclosed that there was a possibility of me taking additional childcare leave, a hostile environment was reinforced.

49. **February 2022**- after the discussion with Matthew Visscher, Sandip Desai began consistently documenting the time I came in and out of the office, emailing me constantly throughout the day, questioning my work performance; making snark remarks directly to me and consistently rejected my timesheets for correction (even when there was no justifiable need to do so).

50. I would literally witness Sandip Desai "peep" from around the corner 4-5 times a day to confirm if I was at my desk throughout the day.

51. Sandip Desai would reject my timesheets and watch me consistently throughout the day, while other employees, including him, had the privilege of "on the hush" arrangements that involved them inputting their time at home when they were able to work from home from time to time against the city's mandate of being in the office.

52. Illustrated below is a visual of where I sat and where Sandip Desai sat.



53. **February 25, 2022**- A day I documented Sandip Desai working from home even though this was no longer permitted per the city ending its teleworking policy in September 2021; all while I was facing cruel scrutinization from him.

54. Sandip Desai enters his own time through a system known as "web clock" that can be accessed anywhere.

55. Web-Clock is an automatic measurement of time, as it involves "snapping it" as soon as a button is clicked.

56. My timesheet had to be manually entered through "city time."

57. There was one instance when I came into the office early and started up a conversation with Amnel Arroyo, ACRIS team member, before logging onto my computer, and he directed me mid conversation by pointing his finger to **"Log in! log in! Sandip."**

58. There was another instance where I emailed management letting them know of a late arrival to work; In person when I arrived in the office, Matthew Visscher stated to me, **"It's not me you have to worry about, it's Sandip."**

59. Everyone On the ACRIS team knew of Sandip Desai's mistreatment and menacing harassment towards me and that this was not being done to anyone else on the team.

60. **March 2022**- after speaking with union representation about my options, I was advised that I was eligible for additional **unpaid childcare leave of absence** under the DC 37 Local 2627 union.

61. I informed Matthew Visscher, Sandip Desai and Robert Paskus of this conversation and notified them that I will pursue this option, as I needed to be at home to also help with childcare.

62. **March 2022- After my return from PFL and during my FMLA,** Sandip Desai began filing informal and formal internal complaints to DOF Labor Relations, Chief of Staff, the Chief Information Officer, Department of Finance's General Counsel, Human Resources and continued to email Timekeeping regarding my employment with the city.

63. **March 2022**, I was asked directly by **Robert Paskus**, Assistant Commissioner, if "I wanted to risk going on unpaid childcare leave" and that my job could be in jeopardy once it was time for me to return.

64. Sandip Desai in audio recordings disclosed that there was a meeting about me in at least March 2022 where a statement was made from DOF General Counsel, Ari Lieberman, that they have "multiple things they can charge me on" regarding disciplinary misconduct.

65. **March 18, 2022**- Sandip Desai while witnessing me with my personal laptop told me that it was okay to attend to personal matters during DOF office time, if it did not interfere with DOF work.

66. It is common practice for employees in the group to bring their personal devices, such as laptops to work. I have on consistent occasions witnessed superiors and other employees doing this.

67. Matthew Visscher was never questioned about his personal laptop that he brought into the office daily.

68. Sandip Desai in audio recordings admitted that after going to the Department of Finance's Labor Relations Department to inquire about me having a personal device, after speaking to me about it, they informed him that I was **not** breaking any policies by having a personal device, such as a personal laptop, in the office.

69. It was not unusual to have down time in the DOF office and oftentimes DOF employees would engage in explicit non city use of time such as watching YouTube videos for hours or sleeping for "a very long time" in the office.

70. These individuals were never reprimanded or questioned as to how they chose to use their personal time.

71. Provided below is a visual illustration a few seats away from my desk of an employee who was observable sleeping in the office on "city time." The snoring would be extremely loud and would disrupt many of us in the office, this happened habitually for long periods, on this occasion, I decided to take a picture.



72. At one point, there was such insurmountable volume of "YouTube" streaming on city time using city resources by other employees, that the city sent an email reminding employees not to stream from YouTube during business hours because the act was limiting the city's network bandwidth.

73. **March 21, 2022**- Management then started requiring me to engage in work assignments that was not typical or that the other team members did not have to endure.

74. This requirement included providing daily document reports of what I was doing for the day and send to Sandip Desai.

75. I was never subjected to this prior to PFA/FMLA leave.

76. **March 22, 2022**- Email exchange between Sandip Desai and I after I requested vacation days for my daughter's first birthday that was on March 28.



77. My response in the next image to Sandip is in black, and Sandip Desai's response is in red.

**From:** Monplaisir, Andy (DOF)
<MonplaisirA@finance.nyc.gov>
**Sent:** Wednesday, March 23, 2022 4:00 PM
**To:** Desai, Sandip (DOF) <DesaiS@finance.nyc.gov>
**Subject:** RE: Leave Requests (3/25 & 3/28)

Hi Sandip,

My daughters first birthday is next Monday and I'd like to take this Friday and Monday off from work, that I believe I am entitled to as a DOF employee. I submitted my request for Friday and Monday yesterday which means I provided 3 days notice that this was happening and that doesn't seem to be late notice about my scheduled vacation.

Even if the employee has available annual leave, a request to take it is not an automatic approval as detailed by the Employee Handbook.

"Employees must take annual leave at a time convenient to the Department. In scheduling annual leave, employees and supervisors are expected to consider such factors as peak work-flow periods, office coverage, staffing for specialized functions and timeliness of the leave request. Supervisors may disapprove an employee's annual leave request or ask the employee to change the dates or the number of days requested if the absence would interfere" (Pages V9-V10)

Also, per the Employee Handbook (Page V10): "Employees must submit all other requests for annual leave at least one week in Advance"

In a previous email, I'm also being asked for my personal flight details for 1 day that I am requesting LWOP (meaning I am not being paid by DOF). Is this standard procedure to request documentation for an LWOP day?

Per the Employee Handbook (Page V10):
  • "The supervisor can approve annual leave for a

78. **March 23, 2023**- In Sandip's email to me he mentions that I've been taking unplanned time off since January 31st.

79. Sandip Desai began weaponizing DOF city policy for disciplinary claims of my attendance and other accusations ever since my return to the office from PFA/FMLA on February 3rd.

80. I would request a day off, "**Leave Without Pay-Childcare**," and Sandip Desai would reject my timesheet until I provided him with "supporting documentation."

81. Sandip Desai did this despite knowing I had an infant at home and that my wife and I were first time parents.

82. After the birth of my child, my wife and I were the primary caretakers of our newborn, as we were away from family.

83. My wife would be the only parent to stay at home with our infant, whilst she also navigated her next career steps coupled with her being in a rigorous advanced degree program.

84. My timesheets will show being in the office with arrival times earlier than 9:30am, which was my required time to be in the office.

85. Sandip Desai described me as a "flaky" employee in audio recordings after my return to the office.

86. Sandip Desai would usually be in the office at around **7:30-7:45am** and would exercise his **managerial privilege** by leaving the office every day anytime between **1:45pm-2:30pm**.

87. This "end of workday" time afforded to Sandip Desai is considered very early under most full-time work environment standards.

88. Sandip Desai did this because he lived in "New Jersey" and wanted to beat the rush hour commute.

89. It was known to everyone in the office, "that you would never catch Sandip in the office pass 3:00pm."

90. Sandip Desai admitted in audio recordings that Robert Paskus, Assistant Commissioner, at one point instructed him in relation to me to "give him some leeway."

91. Robert Paskus attempted to keep this punishing harassment under control but did not take any action to shield me from Sandip Desai.

92. **April 4, 2022**- I was asked by Robert Paskus, Assistant Commissioner, if I could stay longer to accommodate the return of Irina Voloshina instead of going on my unpaid childcare leave of absence earlier.

93. I decided to start my leave in late June 2022 after Irina Voloshina's return.

94. Sandip Desai, in audio recordings, said that he was instructed by Matthew Visscher to go on my work computer to "backup files" as they feared that I would quit suddenly.

95. Sandip Desai admitted to viewing my personal documents without my consent citing DOF policy.

96. I had personal documents such as information that included personal identifiable information such as the social security numbers of my family and other private information of my family, my personal bank statements, career related information and documents related to personal family matters on my computer.

97. Sandip Desai disclosed in the audio recording that **even though I had three (3) DOF work computers** at my desk that he only chose to "back up" the computer that had my personal documents on it and not the **other two (2) testing machines** that were DOF work related.

98. Sandip Desai intentionally and willfully violated my right to an expectation of privacy at my desk.

99. Sandip Desai admitted in audio recordings in one instance of perusing through my resume on my work computer.

100. I still do not know where my personal files by Sandip Desai are currently being stored and who else has accessed/viewed them.

101. This unwarranted and invasive **intrusion** of my privacy as a government employee at the time from Sandip Desai was a violation of my constitutional rights in the Fourth Amendment.

102. **May 2022- Kristi-Anna Hernandez, former employee, Chief of Staff**, **Afro-Latina female**, unsolicited mentioned to me that I was being "mistreated" by the ACRIS team in her attempt to help me apply for a different role with the city.

103. She stated verbatim, "I want to try to help you before they try to do anything negative to you."

104. At the time I *did not know why she thought this or the information she was aware of that I didn't know*.

105. In this same conversation, I mentioned to Kristi-Anna that Sandip Desai kept rejecting my timesheets.

106. Kristi-Anna responded, "Really? Isn't your title computer specialist and you enter your own time?"

107. I said, "yes, he even rejects it while I'm within my grace period."

108. Kristi-Anna responded, "he needs to be careful because that could be considered **harassmen**t."

109. Kristi-Anna then proceeded to provide an experience she had with Sandip Desai where she sent him an e-mail that he ignored, she stated that she walked over to him and despite seeing her presence he continued to ignore her.

110. Sandip Desai in audio recordings made stereotypical racial statements describing me as "aggressive" "hard to deal with" and referring to me as an employee that's been "**suspect.**"

111. When he was prompted for examples of his description, he couldn't provide any examples.

112. Sandip Desai also could not provide any examples of when I've not been able to meet work deliverables.

113. Per Sandip Desai's complaints regarding my employment with the city: surveillance into alleged disciplinary misconduct was initiated by a separate agency.

114. Internal "collection" report gathered while pursuing possible disciplinary claims against me, this specific example being of my LinkedIn profile. Collection date: **May 17, 2022**.

## Web Data Collection Report

**Page Title**
(12) Andy Monplaisir | LinkedIn

**URL**
https://www.linkedin.com/in/andymonplaisir/

**Collection Date**
Tue May 17 2022 09:20:58 GMT-0400 (Eastern Daylight Time)

**Collected by**
Kenneth Jackson ██████@doi.nyc.gov)

**IP Address**
154.6.25.4

**Browser Information**
Mozilla/5.0 (Windows NT 10.0; Win64; x64) AppleWebKit/537.36 (KHTML, like Gecko) Chrome/101.0.4951.67 Safari/537.36

**Digital Signature (SHA256 / PKCS#1v1.5)**
601c114fbc6cb12f6cb2300db53b640a8478a52d1209fd0b9c03fd16ac9489aa12235e9f1b0903deb7dab97cd0ea
5ddbe4f30d8b8c5a480449dcbe065536977f7d6b661fe0c095571bb35a53c7857da3e37399ec9ec5fb35db9d2601
72983a1bf6084809621d0d225b1dac0a60e49279f272c60cebe7872a4a0a5969101d1b4bf87966eca00f29076541
ed97eb888444f173991549e701840f779df156723ccebf82344946bab985d8284b8f0f68ba570f7bdceafd094def
192deea0a708b99830d303e1dc497e885b679ce9cf46e3f3496fc4af47d87af5d80da3317545270243b044d1079
6a040ab762537fba4c9926b49d14712c0772a946564e1b98a88f8

115. **June 2022**- Irina Voloshina, Russian, Senior Software Developer, **returned** from a 7 month leave of absence.

116. After her return to the office, Sandip Desai informed me that I needed to be at Irina's desk for the next two weeks and be away from my own workstation to help transition my duties over to her.

117. Irina Voloshina, an employee with more than 30 years of work experience and who **ironically previously was employed in my exact role** before switching roles within the same group acted as if she had no idea what the DOF work I was doing entailed.

118. If there were any instances where I was not at Irina Voloshina's desk, Sandip Desai would approach me and say, "what are you doing why you can't sit at Irina's desk?" and at one point screamed at me in frustration when he saw me at my own desk taking a break.

119. Irina Voloshina, in the most blatant and explicit exercise of her "**white privilege**" knowing that she herself had just come back from a 7 month leave of absence and that I was

going on one for my child, decided to "join in" with the hostile harassment of Sandip Desai by engaging in falsehoods in my last two weeks with claims that I was not properly transitioning my work duties over to her.

120. Irina Voloshina would take her own lunch break and I would have to sit at her desk while she was at lunch per Sandip Desai's instructions.

121. Sandip Desai and Irina Voloshina would scrutinize me when I took my own lunch break during this two-week period.

122. Irina Voloshina during her 7 months leave of absence would sometimes visit the office.

123. During this time, she told the majority of the ACRIS team that she was working as a Pilates or Yoga instructor.

124. Irina never endured any workplace harassment or retaliatory actions, nor was she subjected to what I endured when she informed the ACRIS team that she would be taking a leave of absence to take care of her sick mother for almost a year.

125. Irina Voloshina was also not a subject to any disciplinary claims, invasive intrusions or claims of outside employment while on her leave of absence at home.

126. **June 26, 2022**- 2 days before my last day of going on unpaid childcare leave, I received a negative performance review from Sandip Desai.

127. **June 26, 2022**- I then emailed Bob, Matt and Sandip informing them that I think this review was done in retaliation to me coming back from PFA/FMLA and deciding to take approved unpaid childcare leave of absence, and that I had been performing under extreme hostile work conditions ever since.

128. There was no response.

129. **June 28, 2022**- On my last day, an in-person performance review was conducted, (with Robert Paskus, Sandip Desai, and Veena Mandala, **Indian**, where they discussed my performance review).

130. My performance review was conducted with two managers and the Assistant Commissioner.

131. This was never done previously during my time at DOF or to any other employee on the ACRIS team.

132. Sandip Desai said on audio recordings that this different format to conduct my performance review was done in this way, because **"of how he is."**

133. Sandip Desai led the performance review discussion.

134. Veena Mandala was quiet the entire review and the one time she spoke she did so to defend Sandip Desai.

135. Robert Paskus, AC, also hardly spoke and when he did it was to reinforce that there were "others" such as my previous manager, that had issues with me and that "it wasn't just them."

136. I was never informed of these claims before.

137. There has been no document of any groups or teams that has ever complained about my work performance or work demeanor in the office.

138. I was known to be a quiet person by other employees.

139. Sandip Desai stated that Matthew Visscher complained about the work that I had been doing for DOF since coming back from PFL/FMLA.

140. These astonishing complaints about my performance were never mentioned before.

141. In the performance review discussion, Sandip Desai also included damaging performance examples from Irina Voloshina, who at this point had only been back in office for about 2 weeks after being gone for almost a year.

142. It has been revealed that Irina Voloshina volunteered to serve as a witness in all disciplinary claims against me.

143. I mentioned to them in the meeting that the timing (my last day at DOF before going on unpaid childcare leave) of the review was suspicious and that I felt blindsided on my last day and "ganged" up on.

144. I did not sign off on the performance review.

145. **July 2022-** I went on an unpaid childcare leave of absence from July 1st with a return date of March 2023.

146. **October 31, 2022**- while on approved unpaid childcare leave of absence with 90 days to return, I was met with disciplinary claims of misconduct from the Department of Finance with a Notice of Statement of Charges by the Department of Finance's General Counsel, Ari Lieberman.

147. DOF included claims of my freelancing effort while on unpaid leave of absence.

148. DOF never communicated to me that self-employment was violative of DOF policies during the time it launched its investigation from at least March 2022 after my return from PFA/FMLA.

149. The Department of Finance attempted to trap me into continuous alleged misconduct while allowing the severe workplace harassment from Sandip Desai.

150. DOF furthered its persecution and PFA/FMLA retaliation by sending me disciplinary misconduct claims while I was on an unpaid childcare leave of absence at home bonding with my infant.

151. The Department of Finance subsequently violated my rights as a protected competitive class employee by denying my entitlement to union representation as I was a potential subject of disciplinary action and was not informed or questioned prior to these charges being sent to me.

152. **November 2022**- After charges were served, I retained union representation.

153. **November 29, 2022**- My union representative, Norlita DeTaza, asked Joshua Hantman, DOF enforcement attorney, in email for information relating to the disciplinary charges.

154. I have copied her email statement request below:

"I am writing to request the following information in relation to the disciplinary charges against Andy Monplaisir. According to Section 12-306(c)(4) of the New York City Collective Bargaining Law, the Union is entitled to information that is necessary for bargaining and to administer and monitor the terms of the collective bargaining agreement with the City of New York. The department's failure to comply with this request is a violation of the collective bargaining law.

Please provide the following information prior to the Informal Conference (Step 1).

a) Copies of all documents, statements, including without limitation, any memorandum between or among agents of DoF relating to Mr. Montplaisir's alleged conduct that gave rise to the instant charges;

b) Copies of all written rules procedures and/or policies that DoF intends to rely upon at the disciplinary hearing;

c) Copies of all statements, in any form, made by any witness in relation to these charges;

d) Name and title of all witnesses DoF intends to present at the hearing;

e) Copies of Mr. Montplaisir's disciplinary record."

155. **November 30, 2022**- Joshua Hantman in response to the request provided my union representation the next day with:
1) My own response statement to the charges, prior to me having union representation
2) A copy of the code of conduct manual

3) A policy and procedure manual and

4) NYC Charter Chapter 68 manual.

156. **November 2022**- This denial of fair due process by DOF by not providing any information to me regarding the disciplinary charges sent to me while at home on unpaid childcare leave violated Civil Service Law 75 and Section 12-306(c)(4) of the New York City Collective Bargaining Law.

157. This violation of Civil Service Law 75 was an attempt to "cover up" the Department of Finance's vile workplace harassment, cruel retaliatory actions, and targeted bias towards me.

158. The union representative also asked Joshua Hantman in email:

"I do not understand why you are compeling a member to come in / devote time to do a hearing while he is out on leave. It is unacceptable and on top of that, no Judge from OATH will allow us to put this case on a calendar while he is still out."

159. **Joshua Hantman's response:**

"Your client's childcare leave does not appear to impede his ability to work his other unauthorized outside employment."

160. Accordingly, there is nothing in Chapter 68 that gives DOF any right to pursue a disciplinary charge against me for "unauthorized" freelancing as Section 2404 (b) (2) of the NY City Charter Chapter 68 suggests that a public servant "**may submit** a written request to the head of the agency served by the public servant for determination of whether such firm is engaged in business dealings with **such agency**." The foregoing provision is not a mandatory provision and only applies if I "have an interest in a firm…engaged in business dealings with the city, **except if such interest is in a firm whose shares are publicly traded."**

161. KFORCE shares are publicly traded on NASDAQ.

162. KFORCE is not alleged to have business dealings with DOF during the time of my public service with DOF.

163. There was also **no documentation provided to me by the city** that underlined what I could and could not do as a city employee while I was at home bonding with my infant.

164. One of the disciplinary offenses that DOF pursued was that I used city time for family personal matters.

165. It is an unconstitutional infringement of my right to free speech and enforces treatment of me by the Department of Finance as a slave by treating me as if I was property and had no rights to pursue personal matters from time to time while at work like other employees.

166. Joshua Hantman informed my union representative that my freelancing could be considered "criminal" without providing clarification, and that the department was only seeking "resignation" as a settlement of discipline.

167. **December 15, 2022**- I resigned under duress because of the overwhelming stress and anxiety DOF's disciplinary actions were causing me that involved taking time away from my family during the holidays while on unpaid childcare leave of absence **and** without the right amount of information from the Department of Finance relating to these disciplinary claims.

168. This extortion tactic employed by the Department of Finance to intimidate and publicly embarrass me while in a vulnerable position is disgracefully unethical.

169. This undertaking of coercion to force me to resign was in retaliation to me taking my PFA/FMLA leave, which is against both Federal and State labor laws.

170. The Department of Finance in its disciplinary enforcement also violated the requirement currently in place with the DC-37 Local 2627 union and the City of New York to operate in good faith in disciplinary practices for its members.

171. As a young professional, the public perception that the inclusion of a public disclosure of misconduct after a forceful resignation and other harmful reputational damage that has been caused from the revolting workplace harassment and aggressive retaliatory efforts at the hands of the Department of Finance will have significant and lasting consequences on my career advancement for the rest of my life.

172. The City of New York and the Department of Finance has participated in the tarnishing of my personal brand image that can hinder opportunities and limit access to me for desirable positions and will lead to the loss of opportunities.

173. With the nature of my career industry, the impact on my trust and credibility will always be called in question, especially as a black male.

174. The mental anguish causing stress, anxiety, and depression that my family has endured as they watched me go through this at the hands of the Department of Finance can never be restored.



U.S. Department of Justice

Civil Rights Division

NOTICE OF RIGHT TO SUE WITHIN 90 DAYS

VIA EMAIL

*150 M Street, N.E.*
*Karen Ferguson , EMP, 4CON, Room 9.514*
*Washington, DC 20530*

December 15, 2023

Mr. Andy Monplaisir
450 W. 42nd Street
Apt. 11M
New York, NY  10036

Re:  EEOC Charge Against City of New York, Dept. of Finance, et al.
    No. 520202304339

Dear Mr. Monplaisir:

    Because you filed the above charge with the Equal Employment Opportunity Commission, and more than 180 days have elapsed since the date the Commission assumed jurisdiction over the charge, and no suit based thereon has been filed by this Department, and because you have specifically requested this Notice, you are hereby notified that you have the right to institute a civil action under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. 2000e, et seq., against the above-named respondent.

    If you choose to commence a civil action, such suit must be filed in the appropriate Court within 90 days of your receipt of this Notice.  If you cannot afford or are unable to retain an attorney to represent you, the Court may, at its discretion, assist you in obtaining an attorney.  If you plan to ask the Court to help you find an attorney, you must make this request of the Court in the form and manner it requires.  Your request to the Court should be made well before the end of the time period mentioned above.  A request for representation does not relieve you of the obligation to file suit within this 90-day period.

    The investigative file pertaining to your case is located in the EEOC New York District Office, New York, NY.

    This Notice should not be taken to mean that the Department of Justice has made a judgment as to whether or not your case is meritorious.

Sincerely,

Kristen Clarke
Assistant Attorney General
Civil Rights Division

by      /s/ Karen L. Ferguson
Karen L. Ferguson
Supervisory Civil Rights Analyst
Employment Litigation Section

cc: New York District Office, EEOC
   City of New York, Dept. of Finance, et al.

| CHARGE OF DISCRIMINATION | Charge Presented To: | Agency(ies) Charge No(s): |
|---|---|---|
| This form is affected by the Privacy Act of 1974. See enclosed Privacy Act Statement and other information before completing this form. | EEOC<br>FEPA | **520-2023-04339** |

| New York State Division Of Human Rights | and EEOC |
|---|---|
| *State or local Agency, if any* | |

| I Name *(indicate Mr., Ms., Mrs., Miss, Mx., Dr., Hon., Rev.)* | Home Phone | Year of Birth |
|---|---|---|
| Andy Monplaisir | 407-433-1485 | |

Street Address

450 W 42nd Street Apt 11M

NEW YORK, NY 10036

Named is the Employer, Labor Organization, Employment Agency, Apprenticeship Committee, or State or Local Government Agency That I Believe Discriminated Against Me or Others. *(If more than two, list under PARTICULARS below.)*

| Name | No. Employees, Members | Phone No. |
|---|---|---|
| City of New York- Department of Finance | 201 - 500 Employees | (212) 748-4733 |

Street Address

375 PEARL ST

NEW YORK, NY 10038

| Name | No. Employees, Members | Phone No. |
|---|---|---|
| | | |

| Street Address | City, State and ZIP Code |
|---|---|
| | |

| DISCRIMINATION BASED ON | DATE(S) DISCRIMINATION TOOK PLACE |
|---|---|
| | Earliest / Latest |
| Color, Race | 06/29/2022 / 12/15/2022 |

THE PARTICULARS ARE *(If additional paper is needed, attach extra sheet(s)):*

I am an African American Male who has worked at the above-mentioned entity since July 11, 2017, as a senior software developer until I was forced to resign on December 15, 2022.

I believe that I was discriminated against because of my race.

Specifically, I went out on an approved unpaid child-care leave on June 29, 2022, and during that time, I was notified about allegations from someone within my former employer who made false accusations against me. I was being accused of working on an outside employment while I was on a 90-day unpaid childcare approved leave. I requested through my union representative to include the Conflict-of-Interest Board in a potential settlement discussion and was told that the entity that is a part of the City of New York did not want to speak with me in regard to a potential settlement, I was told that the department wanted only my resignation.

| I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY – *When necessary for State and Local Agency Requirements* |
|---|---|
| I declare under penalty of perjury that the above is true and correct. | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief.<br>SIGNATURE OF COMPLAINANT |
| **Digitally Signed By: Andy Monplaisir**<br>**06/07/2023**<br><br>*Charging Party Signature* | SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE *(month, day, year)* |

|  | Charge Presented To: | Agency(ies) Charge No(s): |
|---|---|---|
| CHARGE OF DISCRIMINATION<br><br>This form is affected by the Privacy Act of 1974.  See enclosed Privacy Act<br>Statement and other information before completing this form. | EEOC<br><br>FEPA | **520-2023-04339** |

| **New York State Division Of Human Rights** | and EEOC |
|---|---|
| *State or local Agency, if any* | |

Mr. Joshua Hantman, was the person who falsely accused me, tried to pursue charges against me only to force me to resign without giving me the opportunity to present my case while other employees, were given that chance and treated better than me. I did not get a chance to file an internal claim but before I resigned on or about June of 2022, I sent an email directly to my direct manager Mr. Sandip Desai, Mr. Mathew Visscher his direct manager and to Mr. Bob Paskus the assistant commissioner. I specifically told them that I felt like I was being harassed and that I was being targeted to do things that other team members did not have to do. I also mentioned that I felt my negative review was retaliation because I was going out on approved child leave. I was also being portrayed as an "hard to work with" employee which was not true and, my former co-workers from another group could corroborate that. I was being excluded and I learned about a group that was created via teams called, "The Andy not included group. " Although I did not mention the race discrimination in my email, I did feel discriminated against because of my race.

I was left with no other option than to resign on December 15, 2022, during the holidays.

The Conflict of interest board, is now requesting a settlement after my resignation, and after I was previously told that they did not want to speak to me regarding a settlement, this explicitly and implicitly notions that my former employer used improper tactics to force me to resign as in other situations the two departments work in tandem with other employees, and I believe that there is a bias in the way rules and laws are currently being enforced for certain employees; in particular, African American city employees where harsher disciplines are handed out for similar offenses to white employees, and where bullying and fear tactics are used to push more African American employees out of their positions.

An example is my white male manager, Matthew Vissher explicitly mentioned how his outside employment was providing him with "great financial gain" in a team meeting; he is currently still employed by the city and accommodations were made for him to continue with his outside employment. I was the only African American Male working on my team, and I believe resignation was aggressively sought to push me out of my position, so that they could hire someone else while I was on my leave and so I was targeted.

I would like to sue my former employer and I would like to request that I am issued a Notice of Rights to Sue letter.

Based on the above, I believe that I was discriminated against in violation of Title VII of the Civil Rights Act of 1964, as amended.

| I want this charge filed with both the EEOC and the State or local Agency, if any.  I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY – *When necessary for State and Local Agency Requirements* |
|---|---|
| I declare under penalty of perjury that the above is true and correct.<br><br>**Digitally Signed By: Andy Monplaisir**<br><br>**06/07/2023**<br><br><br>*Charging Party Signature* | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief.<br>SIGNATURE OF COMPLAINANT<br><br>SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE<br>(*month, day, year*) |

**PRIVACY ACT STATEMENT:** Under the Privacy Act of 1974, Pub. Law 93-579, authority to request personal data and its uses are:

1. **FORM NUMBER/TITLE/DATE.** EEOC Form 5, Charge of Discrimination (11/09).

2. **AUTHORITY.** 42 U.S.C. 2000e-5(b), 29 U.S.C. 211, 29 U.S.C. 626, 42 U.S.C. 12117, 42 U.S.C. 2000ff-6.

3. **PRINCIPAL PURPOSES.** The purposes of a charge, taken on this form or otherwise reduced to writing (whether later recorded on this form or not) are, as applicable under the EEOC anti-discrimination statutes (EEOC statutes), to preserve private suit rights under the EEOC statutes, to invoke the EEOC's jurisdiction and, where dual-filing or referral arrangements exist, to begin state or local proceedings.

4. **ROUTINE USES.** This form is used to provide facts that may establish the existence of matters covered by the EEOC statutes (and as applicable, other federal, state or local laws). Information given will be used by staff to guide its mediation and investigation efforts and, as applicable, to determine, conciliate and litigate claims of unlawful discrimination. This form may be presented to or disclosed to other federal, state or local agencies as appropriate or necessary in carrying out EEOC's functions. A copy of this charge will ordinarily be sent to the respondent organization against which the charge is made.

5. **WHETHER DISCLOSURE IS MANDATORY; EFFECT OF NOT GIVING INFORMATION.** Charges must be reduced to writing and should identify the charging and responding parties and the actions or policies complained of. Without a written charge, EEOC will ordinarily not act on the complaint. Charges under Title VII, the ADA or GINA must be sworn to or affirmed (either by using this form or by presenting a notarized statement or unsworn declaration under penalty of perjury); charges under the ADEA should ordinarily be signed. Charges may be clarified or amplified later by amendment. It is not mandatory that this form be used to make a charge.

**NOTICE OF RIGHT TO REQUEST SUBSTANTIAL WEIGHT REVIEW**

Charges filed at a state or local Fair Employment Practices Agency (FEPA) that dual-files charges with EEOC will ordinarily be handled first by the FEPA. Some charges filed at EEOC may also be first handled by a FEPA under worksharing agreements. You will be told which agency will handle your charge. When the FEPA is the first to handle the charge, it will notify you of its final resolution of the matter. Then, if you wish EEOC to give Substantial Weight Review to the FEPA's final findings, you must ask us in writing to do so within 15 days of your receipt of its findings. Otherwise, we will ordinarily adopt the FEPA's finding and close our file on the charge.

**NOTICE OF NON-RETALIATION REQUIREMENTS**

Please **notify** EEOC or the state or local agency where you filed your charge **if retaliation is taken against you or others** who oppose discrimination or cooperate in any investigation or lawsuit concerning this charge. Under Section 704(a) of Title VII, Section 4(d) of the ADEA, Section 503(a) of the ADA and Section 207(f) of GINA, it is unlawful for an *employer* to discriminate against present or former employees or job applicants, for an *employment agency* to discriminate against anyone, or for a *union* to discriminate against its members or membership applicants, because they have opposed any practice made unlawful by the statutes, or because they have made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under the laws. The Equal Pay Act has similar provisions and Section 503(b) of the ADA prohibits coercion, intimidation, threats or interference with anyone for exercising or enjoying, or aiding or encouraging others in their exercise or enjoyment of, rights under the Act.