USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 08/24/26

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

ANDY MONPLAISIR,

Plaintiff,

-v-

CITY OF NEW YORK, DEPARTMENT OF FINANCE, et al.,

Defendants.

24-cv-1882 (LJL)

OPINION AND ORDER

LEWIS J. LIMAN, United States District Judge:

Defendants the City of New York, Department of Finance (the "DOF"), Sandip Desai, Robert Paskus, Matthew Visscher, Irina Voloshina, Ari Lieberman, and Joshua Hantman (collectively, without the City and DOF, "Individual Defendants," and with DOF, "Defendants") move, pursuant to Federal Rule of Civil Procedure 12(b)(6), for an order dismissing the Amended Complaint ("AC") of Plaintiff Andy Monplaisir ("Plaintiff"), proceeding *pro se*, for failure to state a claim for relief. Dkt. No. 59.

For the following reasons, the motion to dismiss is granted.

**BACKGROUND**

The following facts are drawn from the AC and from Plaintiff's declaration before this Court and his opposition to the motion to dismiss. They are taken as true for the purposes of this motion.

Plaintiff identifies as a Black man with caregiver status. Dkt. No. 14 at 10 (the "AC"); *id.* ¶ 59.[1] For a seven-year period, from October 5, 2015 until December 15, 2022, he was

[1] Citations to the AC reference ECF pagination or, when citing to a paragraph, the numbered paragraphs on pages twelve to thirty-eight of the AC.

employed by the City, and from July 2017 until December 2022 he was employed by DOF as a Senior Software Developer on the ACRIS team. *Id*. In May 2019, Plaintiff's supervision shifted to Sandip Desai ("Desai"). After the change in management in 2019, Plaintiff alleges that he was "constantly getting harassed" by Desai, resulting in extreme anxiety and feelings of alienation from this ACRIS team. *Id*. at 11. The ACRIS team consisted of 12 people, and Plaintiff was the only Black software developer. *Id*. at 10.

## I. Workplace Conditions Prior to Plaintiff's Paid Family Leave and FMLA Leave

Plaintiff alleges a series of negative interactions with Desai and team members from December 2019 until Plaintiff took leave in November 2021 to care for his newborn daughter. Plaintiff details negative treatment over Microsoft Teams, including a hostile message from a Chinese coworker, Ray Mak, and a group chat titled "Andy not invited." *Id*. ¶¶ 1, 17–18. Plaintiff also claims Desai questioned his integrity along with that of another Black employee and made comments that they were lying or "attempting to beat the system" in response to scheduling accommodations. *Id*. ¶¶ 2–6. Plaintiff alleges that he did not experience this level of harassment under his previous manager. *Id*. ¶ 15.

In September 2020, Plaintiff requested approval from Desai to use his DOF employment as class credit for his Master's program. *Id.* ¶ 8. In response, Desai questioned whether he could be a student under DOF policy. *Id*. Plaintiff was fearful that Desai could prevent his graduation if he did not approve the credit. *Id.* ¶ 11. In April 2021, Plaintiff was hired as a freelancer by KFORCE. *Id.* ¶ 12. Due to Desai's response to Plaintiff's disclosure that he was a part-time student and Plaintiff's concern of a "reinforced hostile environment," Plaintiff chose not to disclose his freelance work to Desai. *Id.* ¶ 13. Under a previous manager, Plaintiff had been granted approval for outside self-employment. *Id.* ¶ 14.

## II. Request for Remote Work

From March 2020 until August 2021, the ACRIS team was permitted to work remotely pursuant to the City of New York's (the "City") teleworking policy in response to the COVID-19 pandemic. *Id*. at 10. This policy ended in September 2021. *Id.* at 11. Plaintiff alleges that his upper management did not agree with the City's return-to-office policy and that management believed the ACRIS team could complete their work remotely. *Id.* ¶ 40. On February 9, 2022, two ACRIS team members outside Plaintiff's protected class, Rizwan Qadri and Satyanarayan Chaluvadi, were allowed to work from home. *Id.* ¶¶ 37–38. As of 2023, Plaintiff alleges that the City has allowed thousands of its employees to work remotely, including the ACRIS team and Desai. *Id.* ¶¶ 26, 55–56.

In September 2021, Plaintiff submitted to Desai and the Equal Opportunity Office ("EOO") a recommendation from a medical professional stating that working in the office would cause him anxiety. *Id.* ¶ 19. His anxiety stemmed from his concern that he would expose his six-month-old to COVID-19. *Id.* ¶ 20. On September 19, 2021, Plaintiff received abnormal ECG reports supporting his medical concerns. *Id.* ¶ 27. Plaintiff's request for an accommodation was denied after the EOO asked him if he was vaccinated, and Plaintiff responded "no." *Id.* ¶¶ 19, 22–24. Plaintiff continued to work in-person until he began his childcare leave in November 2021. *Id.* ¶¶ 28–29.

## III. Plaintiff's First Childcare Leave

On or about March 4, 2021, Plaintiff submitted two forms of notice for job-protected leave, paid leave pursuant to the New York State Paid Family Leave Benefits law ("PFL") and unpaid leave pursuant to the Family and Medical Leave Act ("FMLA"), to Michelle Stevens in the DOF Time Leave Administration Department. *Id.* at 10. Plaintiff's forms stated that he may

take either or both forms of protected leave anywhere from March 19, 2021 to March 19, 2022. *Id*. Plaintiff's daughter was born on March 28, 2021. *Id*.

Plaintiff took PFL leave from November 3, 2021 until January 22, 2022, and FMLA leave from December 27, 2021 until February 3, 2022, when he returned to the office. *Id.* at 11. Plaintiff alleges that his FMLA leave was still active until March 18, 2022. *Id.* During his PFL and FMLA leave, Plaintiff was asked to complete work assignments and he obliged out of fear of retaliation. *Id.* ¶¶ 31–32.

## IV. Plaintiff's Return to Workplace

On February 22, 2022, shortly after Plaintiff's return to the office, Plaintiff had a conversation with Matthew Visscher ("Visscher"), Director of DOF, about his future plans and informed Visscher that he was considering taking additional childcare leave. *Id.* ¶ 46. Visscher stated that Plaintiff may be asked to complete work during his leave if he did so. *Id.* ¶ 48. In March 2022, Plaintiff was informed that he was eligible for additional unpaid childcare leave of absence under the collective bargaining agreement of the DC 37 Local 2627 union, *id.* ¶ 65, and he notified Desai, Visscher, and Visscher's manager, Robert Paskus ("Paskus"), the Assistant Commissioner of DOF, of his intent to pursue this option to assist with childcare at home. *Id.* ¶¶ 64, 67. Paskus asked Plaintiff if he "wanted to risk going on unpaid childcare leave" and that his job "could be in jeopardy" upon Plaintiff's return. *Id.* ¶ 66.

Following Plaintiff's February 22, 2022 conversation with Visscher, Plaintiff alleges that Desai's harassment "'turned' up." *Id.* ¶ 49. Desai began consistently documenting the time Plaintiff came in and out of the office, emailing Plaintiff constantly throughout the day, questioning his work performance, making snarky remarks, checking that he was at his desk, and consistently rejecting his timesheets and asking that they be corrected. *Id.* ¶¶ 51–52. When Plaintiff arrived at the office early and was in the middle of a conversation with an ACRIS team

member, that team member interrupted the conversation and reminded Plaintiff to log in, saying "Login! Login! Sandip!" *Id.* ¶ 60. On another occasion, Plaintiff emailed management of a late arrival, and in response Visscher stated, "It's not me you have to worry about, it's Sandip." *Id.* ¶ 61. Desai had a meeting with DOF's General Counsel, Ari Lieberman ("Lieberman"), in March 2022, where Lieberman stated that they have "multiple things they can charge [Plaintiff] on" regarding disciplinary conduct. *Id.* ¶ 69. Desai described Plaintiff as "aggressive" and "hard to deal with" and referred to Plaintiff as an employee that has been "suspect." *Id.* ¶ 114. Desai could not provide examples of when Plaintiff had not been able to meet work deliverables. *Id.* ¶ 116.

In March 2022, Desai began filing informal and formal complaints against Plaintiff to a series of personnel in upper management and Human Resources. *Id.* ¶ 65. On or about March 21, 2022, management began to require Plaintiff to provide Desai with daily document reports of his work. *Id.* ¶¶ 78–79. Plaintiff also alleges heightened scrutiny for requested time off for childcare and his daughter's first birthday, including a requirement that he provide supporting documentation for childcare leave requests. *Id.* ¶¶ 81–86. Desai admitted that Paskus instructed him to "give [Plaintiff] some leeway." *Id.* ¶ 95. Kristi-Anna Hernandez ("Hernandez"), a former employee at DOF, helped Plaintiff apply for a different role with the City and mentioned that Plaintiff was being "mistreated." *Id.* ¶ 106. Hernandez told Plaintiff, "I want to try to help you before they try to do anything negative to you." *Id.* ¶ 107.

In or around April or May of 2022, Desai backed up one of the computers at Plaintiff's desk. *Id.* ¶ 102. Desai stated that Visscher instructed him to do so because they feared that Plaintiff would quit suddenly. *Id.* ¶ 99. Plaintiff had personal documents such as personal bank statements, career-related information, and documents related to personal family matters on his

work computer. *Id.* ¶ 101. Desai admitted to viewing personal documents without Plaintiff's consent and cited to DOF policy. *Id.* ¶ 100. Plaintiff alleges that he does not know where his personal files that were backed up are being stored and who else has accessed/viewed them. *Id.* ¶ 105. Plaintiff alleges that an internal collection report gathered data regarding his LinkedIn profile on May 17, 2022. *Id.* ¶ 118.

On April 4, 2022, Paskus asked Plaintiff to delay his planned unpaid childcare leave to accommodate Irina Voloshina ("Voloshina"), a white Senior Software Developer, who was out on leave at the time. *Id.* ¶¶ 97–98. Voloshina had previously been employed in Plaintiff's "exact role" prior to switching roles within the same group and had over 30 years of experience. *Id.* ¶ 121. Plaintiff agreed to begin his leave after Voloshina's return. *Id.* Voloshina returned in June 2022. *Id.* ¶ 119. Plaintiff alleges that Voloshina's seven-month leave of absence was also FMLA leave. *Id.* During her leave, Voloshina would occasionally visit the office and told most of the ACRIS team that she was working as a Pilates instructor. *Id.* ¶¶ 126–27. During this time, she was also taking care of her mother. *Id.* ¶ 130. Plaintiff alleges that Voloshina was not subject to any disciplinary claims, invasive actions, or claims of outside employment during her leave. *Id.* ¶¶ 129–30. She was also told not to work during her time off. *Id.* ¶ 132. After Voloshina returned to the office, Plaintiff was instructed to sit at Voloshina's desk for two weeks to transition his duties. *Id.* ¶¶ 120, 124. If Plaintiff was not at Voloshina's desk, Desai would approach him and "at one point" screamed in frustration. *Id.* ¶ 122. During this process, Voloshina told Desai that Plaintiff was not properly transitioning his duties. *Id.* ¶ 123.

On June 26, 2022, two days before Plaintiff's unpaid childcare leave, he received a negative performance review from Desai. *Id.* ¶ 133. Following the review, Plaintiff emailed Desai, Paskus, and Visscher stating he believed this was done in retaliation to Plaintiff coming

back from PFL/FMLA leave and deciding to take approved unpaid childcare leave of absence. *Id.* ¶ 134. Plaintiff did not receive a response. *Id.* ¶ 135. On June 28, 2022, Paskus, Desai, and Veena Mandala ("Mandala") conducted an in-person performance review with Plaintiff. *Id.* ¶¶ 136–37. Desai discussed negative performance examples from Visscher and Voloshina of which Plaintiff had no prior knowledge. *Id.* ¶¶ 142–43, 146, 148–49. Plaintiff alleges that there are no documents from groups or teams that have complained about his work performance or demeanor and that this review was contrary to his reputation at work. *Id.* ¶¶ 144–45. During the meeting, Plaintiff mentioned that the timing was suspicious and did not sign off on the performance review. *Id.* ¶¶ 150–51.

## V. Plaintiff's Second Childcare Leave and Resignation

Plaintiff went on approved unpaid childcare leave on July 1, 2022 with a return date of March 2023. *Id.* ¶ 152. On October 31, 2022, Plaintiff received claims of misconduct from DOF and a Notice of Statement of Charges by Lieberman. *Id.* ¶¶ 153–54. The claims were based on his freelancing efforts while on unpaid leave of absence. *Id.* ¶ 154. Plaintiff alleges that DOF never communicated to him that self-employment was violative of DOF policies. *Id.* ¶ 155. Plaintiff was not informed, interviewed, or questioned prior to these charges and alleges that DOF violated his rights as a protected competitive class employee by denying him union representation prior to issuing the charges. *Id.* ¶ 158. He further alleges that DOF attempted to trap him into misconduct, allowed severe workplace harassment and discrimination, and retaliated against him based on his PFL and FMLA leave. *Id.* ¶¶ 156–57.

In November 2022, Plaintiff retained union representation. *Id.* ¶ 159. On November 29, 2022, Norlita DeTaza ("DeTaza"), Plaintiff's union representative, emailed Joshua Hantman ("Hantman"), a DOF enforcement attorney, asking for copies of relevant rules, witness statements, and Plaintiff's disciplinary record. *Id.* ¶¶ 160–63. In response, Hantman provided

Plaintiff's response statement to the charges, a copy of the code of conduct manual, a policy and procedure manual, and the NYC Charter Chapter 68 manual. *Id.* ¶ 162. DeTaza also stated in an email to Hantman that she did "not understand why you are compelling a member to come in / devote time to do a hearing while he is out on leave. . . . no Judge from OATH[2] will allow us to put this case on a calendar while he is still out." *Id.* ¶ 165. Hantman informed DeTaza that Plaintiff's employment at KFORCE could be considered "criminal" and that "the department was only seeking 'resignation' as a settlement." *Id.* ¶ 173. Plaintiff resigned on December 15, 2022 due to "overwhelming stress and anxiety" resulting from DOF's disciplinary actions, lack of information regarding disciplinary claims against him, and Plaintiff's time away from family during the holidays and his unpaid leave. *Id.* ¶ 174.

Less than 60 days after Plaintiff's resignation, Plaintiff was subject to an additional disciplinary process that lasted for over a year, resulting in a public settlement of misconduct with a separate agency and a large fine in February 2024. *Id.* ¶ 192. Plaintiff alleges that this was triggered by Desai and DOF to "make the only black male on the team its scapegoat." *Id.* ¶ 194.

Plaintiff alleges that white ACRIS team members engaged in outside employment without enforcement or termination. Paskus worked as Adjunct Professor at a university with a teaching schedule for the Fall of 2024 on Tuesdays and Thursdays from 8:00 a.m. to 9:25 a.m. *Id.* ¶¶ 184–85. Voloshina worked as a Pilates instructor and, on April 25, 2024, taught classes during work hours. *Id.* ¶¶ 186–87.

---

[2] Plaintiff does not define this acronym in the AC. New York City operates an Office of Administrative Trials and Hearings ("OATH"). *See* https://www.nyc.gov/site/oath/index.page.

Plaintiff alleges that DOF's adverse actions against him have had a significant impact on him. *Id.* ¶ 182. Plaintiff alleges significant financial harm resulting from attorneys' fees. *Id.* ¶¶ 195–96. He is also now ineligible for the Public Service Loan Forgiveness program due to alleged "orchestrated" constructive termination and alleged racial bias, which he claims will affect his financial mobility going forward. *Id.* ¶¶ 203–07. Plaintiff also alleges damage to his professional reputation and future employment. Plaintiff cites an example from March 4, 2024 where a recruiter "ghosted" him after asking questions pertaining to Plaintiff's public settlement disposition. *Id.* ¶¶ 196–99, 208. He alleges that this damage to his reputation further limits his career prospects due to increased questions surrounding his trust and credibility as a Black male. *Id.* ¶ 209.

**PROCEDURAL HISTORY**

Plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") on June 7, 2023. Dkt. No. 14 at 41. Plaintiff received a Notice of Right to Sue from the EEOC on December 15, 2023. *Id.* at 73. Plaintiff initiated this case by Complaint on March 12, 2024. Dkt. No. 1. Plaintiff filed an Amended Complaint on July 5, 2024. Dkt. No. 14. DOF and the City moved to dismiss the AC on September 16, 2024. Dkt. No. 23. The Individual Defendants moved to dismiss the AC on September 26, 2024. Dkt. No. 39.

On February 25, 2025, Plaintiff informed the Court that he and his wife filed for voluntary bankruptcy. Dkt. No. 43. On April 18, 2025, the Court denied Defendants' motions to dismiss the AC without prejudice to renewal. Dkt. No. 47. On September 29, 2025, Defendants filed a letter requesting permission to refile the motion to dismiss as Plaintiff had regained standing to pursue his claims. Dkt. No. 55. The Court granted leave and so ordered the parties' proposed briefing schedule. Dkt. Nos. 56, 58.

Defendants filed a second motion to dismiss the AC on October 10, 2025, along with a memorandum of law, the declaration of Zachary T. Ellis, and supporting exhibits. Dkt. Nos. 59–61. Plaintiff filed a memorandum of law in opposition to Defendants' motion to dismiss on October 21, 2025. Dkt. No. 63.

## LEGAL STANDARD

To survive a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), a complaint must include "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A complaint must offer more than "labels and conclusions," "a formulaic recitation of the elements of a cause of action," or "naked assertion[s]" devoid of "further factual enhancement" in order to survive dismissal. *Twombly*, 550 U.S. at 555, 557. The ultimate question is whether "[a] claim has facial plausibility, [i.e.,] the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679. Put another way, the plausibility requirement "calls for enough fact to raise a reasonable expectation that discovery will reveal evidence [supporting the claim]." *Twombly*, 550 U.S. at 556; *accord Matrixx Initiatives, Inc. v. Siracusano*, 563 U.S. 27, 46 (2011).

When adjudicating a motion to dismiss under Rule 12(b)(6), the Court considers not only the well-pleaded allegations of the complaint, but documents incorporated by reference and "matters of which judicial notice may be taken." *Chambers v. Time Warner, Inc.*, 282 F.3d 147,

153 (2d Cir. 2002); *see Gray v. Wesco Aircraft Holdings, Inc.*, 454 F. Supp. 3d 366, 382–83 (S.D.N.Y. 2020), *aff'd*, 847 F. App'x 35 (2d Cir. 2021) (summary order).[3]

The Court construes *pro se* pleadings broadly and liberally, interpreting them so as to raise the strongest arguments they suggest. *See Abrams v. Dixon*, 480 F.3d 636, 639 (2d Cir. 2007); *Cruz v. Gomez*, 202 F.3d 593, 597 (2d. Cir. 2000). However, while the Court construes *pro se* pleadings liberally, *pro se* plaintiffs are not relieved of the requirement that they plead enough facts so that their claims are plausible. *See Wee Saidin v. N.Y.C. Dep't of Educ.*, 498 F. Supp. 2d 683, 687 (S.D.N.Y. 2007) ("[*P*]*ro se* status does not relieve a plaintiff of the pleading standards otherwise prescribed by the Federal Rules of Civil Procedure.").

**DISCUSSION**

Plaintiff brings nine claims against all Defendants: (1) retaliation in violation of the Family and Medical Leave Act ("FMLA"), 29 U.S.C. §§ 2601 *et seq.*, AC ¶¶ 211–15; (2) retaliation in violation of the New York State Paid Family Leave Benefits Law ("PFL"), N.Y. Workers' Comp. L. §§ 200 *et seq.*, *id.* ¶¶ 216–220; (3) discrimination in violation of the New York Civil Service Law ("Civil Service Law"), N.Y. Civ. Serv. L. §§ 75, *id.* ¶¶ 221–25; (4)

[3] Defendants submitted exhibits alongside the motion to dismiss and filed a notice of Local Civil Rule 12.1, notifying Plaintiff that the Court may treat Defendants' motion as a motion for summary judgment due to the written materials filed with their motion. Dkt. Nos. 60, 62. The Court declines to convert the motion to one for summary judgment and excludes Defendants' extrinsic documents. *Chambers*, 282 F.3d at 154 (when a district court is "presented with matters outside the pleadings" it must either "exclude[] the extrinsic documents" or "convert the motion to one for summary judgment"). Defendants assert that various of their exhibits are incorporated by reference in the AC. *See* Dkt. No. 61 at 2 n.2, 4 n.4, 5 n.5 and n.7, 17 n.11. However, mere reference to documents that Defendants filed as exhibits does not imply that plaintiff "reli[ed] on the terms and effect of [the] document[s] in drafting the complaint." *Chambers*, 282 F.3d at 153; *Goel v. Bunge, Ltd.*, 820 F.3d 554, 559 (2d Cir. 2016) ("merely mentioning" or even "offering 'limited quotation[s]' from the document" is insufficient to show that the complaint "relies heavily upon its terms and effect"). Nor are Defendants' exhibits, which include Plaintiff's personnel documents and DOF policies, matters of which the Court can take judicial notice. The Court accordingly disregards Defendants' exhibits.

discrimination under a theory of disparate treatment and hostile work environment in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §§ 2000e *et seq.*, *id.* ¶¶ 226–31; (5) discrimination in violation of the New York State Human Rights Law ("NYSHRL"), N.Y. Exec. L. §§ 290 *et seq.*, *id.* ¶¶ 232–37; (6) discrimination in violation of the New York City Human Rights Law ("NYCHRL"), N.Y.C. Admin. Code §§ 8-101 *et seq.*, *id.* ¶¶ 238–43; (7) violation of the First Amendment pursuant to 42 U.S.C. § 1983 ("Section 1983"), *id.* ¶¶ 244–48; (8) violation of the Fourth Amendment pursuant to Section 1983, *id.* ¶¶ 249–54; and (9) discrimination in violation of the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12101 *et seq.*, *id.* ¶¶ 255–60.

Defendants move to dismiss the AC for failure to state a claim. Dkt. No. 59. Defendants argue that Plaintiff's Title VII and ADA claims should be dismissed as to the Individual Defendants because there is no individual liability under either statute, Dkt. No. 61 at 6, that claims under those statutes based on conduct occurring before August 11, 2022 are time-barred, *id.* at 7–8, and that Plaintiff has not stated a plausible claim of discrimination under those statutes, either through a hostile work environment or disparate treatment theory, *id.* at 11–22. Defendants additionally argue that Plaintiff's claims under the FMLA and Section 1983 based on conduct occurring before March 12, 2021 are time-barred, *id.* at 8–9, and that his claims under the NYSHRL and NYCHRL based on conduct occurring before September 2, 2020 are time-barred, *id.* at 9–10. As to conduct that is not time-barred, Defendants argue that Plaintiff has failed to state a plausible claim of retaliation, discrimination, or constitutional violation. *Id.* at 22–27. As to Plaintiff's claims under the PFL and Civil Service Law, Defendants argue that Plaintiff may not pursue his claims under the PFL in federal court and that Section 75 of the Civil Service Law does not provide a private right of action. *Id.* at 9–10. Defendants

additionally argue that Plaintiff has not stated a plausible claim of discrimination under the NYSHRL or NYCHRL. *Id.* at 26–27.

## I. Applicable Statutes of Limitations

Defendants argue that certain conduct Plaintiff alleges cannot support his claims under Title VII, the ADA, the NYSHRL, the NYCHRL, and the FMLA due to the applicable statutes of limitations. "Although the statute of limitations is ordinarily an affirmative defense that must be raised in the answer, a statute of limitations defense may be decided on a Rule 12(b)(6) motion if the defense appears on the face of the complaint." *Ellul v. Congregation of Christian Bros.*, 774 F.3d 791, 798 n.12 (2d Cir. 2014); *see also Ghartey v. St. John's Queens Hosp.*, 869 F.2d 160, 162 (2d Cir. 1989) ("Where the dates in a complaint show that an action is barred by a statute of limitations, a defendant may raise the affirmative defense in a pre-answer motion to dismiss."). The Court will address each statute of limitations in turn.

### A. Title VII and ADA Claims—Conduct Prior to August 11, 2022

"As a precondition to filing a Title VII claim in federal court, a plaintiff must first pursue available administrative remedies and file a timely complaint with the EEOC." *Deravin v. Kerik*, 335 F.3d 195, 200 (2d Cir. 2003). "The administrative exhaustion requirement applies to pro se and counseled plaintiffs alike." *Fowlkes v. Ironworkers Loc. 40*, 790 F.3d 378, 384 (2d Cir. 2015) (citing *Pikulin v. City Univ. of N.Y.*, 176 F.3d 598, 599–600 (2d Cir. 1999) (per curiam)). "[F]iling a timely charge of discrimination with the EEOC is not a jurisdictional prerequisite to suit in federal court, but a requirement that, like a statute of limitations, is subject to waiver, estoppel, and equitable tolling." *Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385, 393 (1982); *Fowlkes*, 790 F.3d at 393–98. Because exhaustion is an affirmative defense, the defendant bears the burden of establishing the plaintiff's failure to timely exhaust administrative remedies. *See Broich v. Inc. Vill. of Southampton*, 650 F. Supp. 2d 234, 246 (E.D.N.Y. 2009); *cf. Domitz v. City*

*of Long Beach*, 737 F. App'x 589, 590 (2d Cir. 2018) (summary order) (affirming dismissal of discrimination claim where "the complaint contained information that suggested the EEOC charge was not timely filed"). As with Title VII claims, "[a] plaintiff alleging a violation of the ADA must first file a charge of discrimination with the EEOC or the equivalent state agency." *Donahue v. Asia TV USA Ltd.*, 208 F. Supp. 3d 505, 513 (S.D.N.Y. 2016) (citing *Williams v. N.Y.C. Hous. Auth.*, 458 F.3d 67, 69 (2d Cir. 2006) (per curiam)).

Plaintiffs asserting Title VII and ADA claims must file a complaint with the EEOC or an equivalent state agency within 300 days of the allegedly discriminatory action. *See* 42 U.S.C. § 2000e-5(e)(1); 42 U.S.C. § 12117(a); *Gindi v. N.Y.C. Dep't of Educ.*, 786 F. App'x 280, 282 (2d Cir. 2019) (summary order); *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 78–79 (2d Cir. 2015) ("Title VII requires that individuals aggrieved by acts of discrimination file a charge with the EEOC within 180 or, in states like New York that have local administrative mechanisms for pursuing discrimination claims, 300 days after the alleged unlawful employment practice occurred." (internal quotation marks omitted)); *Parker v. Metro. Transp. Auth.*, 97 F. Supp. 2d 437, 499 (S.D.N.Y. 2000) (same as to ADA). "[D]iscrete discriminatory acts are not actionable if time barred, even when they are related to acts alleged in timely filed charges." *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 113 (2002). "Each discrete discriminatory act starts a new clock for filing charges alleging that act." *Id.*; *see Richards v. Dep't of Educ. of City of N.Y.*, 2022 WL 329226, at *6 (S.D.N.Y. Feb. 2, 2022). "Timeliness is measured from the date that the employee receives notice of the discriminatory decision." *Walker v. Linklaters LLP*, 948 F. Supp. 2d 396, 399 (S.D.N.Y. 2013). A litigant's *pro se* status does not alone warrant equitable tolling. *See Rudaj v. Treanor*, 522 F. App'x 76, 77 (2d Cir. 2013) (summary

order); *Walker v. Jastremski*, 430 F.3d 560, 564 (2d Cir. 2005); *Wheeler v. Artuz*, 6 F. App'x 57, 58 (2d Cir. 2001) (summary order); *Smith v. McGinnis*, 208 F.3d 13, 18 (2d Cir. 2000).

Plaintiff affirmatively pleads that he filed a charge of discrimination and attached the charge of discrimination he filed with the EEOC to the AC. AC at 6, 41. That complaint was filed on June 7, 2023. *Id.* at 41.[4] Thus, any alleged discriminatory actions that occurred 300 days prior, or before August 11, 2022, are time-barred for purposes of Plaintiff's Title VII and ADA claims. *See Bernstein v. N.Y.C. Dep't of Educ.*, 2021 WL 4429318, at *5 (S.D.N.Y. Sept. 27, 2021), *aff'd*, 2022 WL 1739609 (2d Cir. May 31, 2022) (summary order); *Parker*, 97 F. Supp. 2d at 449. Those acts may still "provide relevant background evidence" to any timely claims. *Vega*, 801 F.3d at 88 (quoting *Morgan*, 536 U.S. at 112); *see also Davis-Garett v. Urban Outfitters, Inc.*, 921 F.3d 30, 42 (2d Cir. 2019) ("[E]ven with respect to a claim of discrete discriminatory or retaliatory acts, expiration of limitations period does not bar 'an employee from using the prior acts as background evidence in support of a timely claim.'" (quoting *Morgan*, 536 U.S. at 105)); *Harewood v. N.Y.C. Dep't of Educ.*, 2019 WL 3042486, at *4 (S.D.N.Y. May 8, 2019) ("[D]iscrete acts of discrimination that occurred outside the 300-day period [still] . . . provide relevant background evidence to any timely claims."). Moreover, such incidents can be considered in connection with Plaintiff's hostile work environment claim to the extent that they are "sufficiently related" to conduct occurring within the 300-day time period. *See Ball v. Marriott Int'l, Inc.*, 627 F. Supp. 3d 296, 314 (S.D.N.Y. 2022).

---

[4] Plaintiff pleads that he filed the charge on April 29, 2023 but the EEOC charge is signed and dated on June 7, 2023. AC at 6, 41. When a document is incorporated by reference, the Court is guided by the terms of such documents rather than a plaintiff's characterization of them. *Broder v. Cablevision Sys. Corp.*, 418 F.3d 187, 196 (2d Cir. 2005). The Court will thus treat the EEOC charge as filed on June 7, 2023.

**B. FMLA and Section 1983 Claims—Conduct Prior to March 12, 2021**

Plaintiff's claims under the FMLA and Section 1983 are subject to a three-year statute of limitations. 29 U.S.C. § 2617(c)(1), (2) (statute of limitations under the FMLA); *Hogan v. Fischer*, 738 F.3d 509, 517 (2d Cir. 2013) (Section 1983 claims are subject to a three-year statute of limitations).[5] These statutes of limitations were not tolled pending resolution of Plaintiff's EEOC proceedings. *See Bown-Hooks v. City of New York*, 13 F. Supp. 3d 179, 209 (E.D.N.Y. 2014); *Plumey v. New York State*, 389 F. Supp. 2d 491, 497 (S.D.N.Y. 2005) (citing *Zangrillo v. Fashion Inst. of Tech.*, 601 F. Supp. 1346, 1351 (S.D.N.Y. 1985), *aff'd*, 788 F.2d 2 (2d Cir. 1985)); *see also Redman v. N.Y.S. Dep't of Corr. Servs.*, 2011 WL 5119574, at *4 (S.D.N.Y. Oct. 12, 2011) (plaintiff's EEOC grievance "does not toll the statute of limitations applicable to her FMLA claim because the EEOC has no enforcement authority with respect to the FMLA and the statute contains no exhaustion provision"). Accordingly, any claims under the FMLA or Section 1983 premised on events that occurred prior to March 12, 2021 are time-barred.

**C. NYSHRL and NYCHRL—Conduct Prior to September 2, 2020**

The NYSHRL and NYCHRL have three-year statutes of limitations. *See Sotomayor v. City of New York*, 862 F. Supp. 2d 226, 248–49 (E.D.N.Y. 2012), *aff'd*, 713 F.3d 163 (2d Cir. 2013); *Kassner v. 2d Ave Delicatessen Inc.*, 496 F.3d 229, 238 (2d Cir. 2007). Defendants assume that the statutes of limitations under both statutes were tolled during the pendency of Plaintiff's EEOC charge. Dkt. No. 61 at 9; *see DeNigris v. N.Y.C. Health & Hosp. Corp.*, 861 F. Supp. 2d 185, 192 (S.D.N.Y. Mar. 9, 2012) (statute of limitations for claims under NYSHRL and NYCHRL "is tolled for the period between the filing of an EEOC charge and the issuance by the

---

[5] FMLA claims are subject to a two-year statute of limitations unless the violation was "willful." 29 U.S.C. § 2617(c)(1), (2). Defendants concede for the purposes of this motion that Plaintiff has alleged a willful violation and that the three-year statute of limitations applies. Dkt. No. 61 at 8.

EEOC of a right-to-sue letter." (citing *Wilson v. N.Y.C. Police Dep't*, 2011 WL 1215735, at *4 (S.D.N.Y. Mar. 25, 2011))); *Beatty v. N.Y.C. Dist. Council of Carpenters & Joiners of Am.*, 2025 WL 963307, at *3 n.1 (S.D.N.Y. Mar. 31, 2025) (same); *see also Rogers v. Fashion Inst. of Tech.*, 2017 WL 1078572, at *9 n.5 (S.D.N.Y. Mar. 21, 2017) (noting that Second Circuit has not decided the tolling issue but numerous courts in this Circuit have held that an EEOC charge tolls the limitations period for claims under the NYCHRL and NYSHRL); *see also Nat'l Union Fire Ins. Co. v. Adv. Micro Devices, Inc.*, 2016 WL 4204066, at *1 (S.D.N.Y. Aug. 4, 2016) (noting that parties agreed that statute of limitations was tolled).

Plaintiff filed his EEOC charge on June 7, 2023 and the EEOC issued a right-to-sue letter on December 15, 2023. AC at 41, 73. Plaintiff initiated this case on March 12, 2024. Dkt. No. 1. Accordingly, Plaintiff's NYSHRL and NYCHRL claims were tolled for 191 days and any claims premised on conduct that occurred prior to September 2, 2020 are time-barred.

## II. Title VII and ADA Claims Against Individual Defendants

Plaintiff cannot bring claims under Title VII or the ADA against the Individual Defendants. Neither statute provides for individual liability as to Plaintiff's claims. *Patterson v. Cnty. of Oneida*, 375 F.3d 206, 221 (2d Cir. 2004) ("[I]ndividuals are not subject to liability under Title VII" (quoting *Wrighten v. Glowski*, 232 F.3d 119, 120 (2d Cir. 2000))); *Spiegel v. Schulmann*, 604 F.3d 72, 79–80 (2d Cir. 2010) (no individual liability under the retaliation provision of the ADA); *Mabry v. Neighborhood Defender Serv.*, 769 F. Supp. 2d 381, 391 (S.D.N.Y. 2011) ("[T]he ADA does not provide for personal liability on the part of non-employer individuals, except in the case of claims under Title II of the ADA asserted against individuals in their official capacity for prospective injunctive relief." (citations omitted)).

Plaintiff's claims under Title VII and the ADA against the Individual Defendants are therefore dismissed with prejudice.

## III. Discrimination Under Title VII

Title VII makes it unlawful for an employer "to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). When only indirect evidence of intent to discriminate is available, discrimination claims under Title VII are subject to the three-step burden-shifting framework articulated in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–04 (1973). *See Bart v. Golub Corp.*, 96 F.4th 566, 569 (2d Cir. 2024) ("To succeed on a Title VII disparate treatment claim, a plaintiff must prove discrimination either by direct evidence of intent to discriminate or, more commonly, by indirectly showing circumstances giving rise to an inference of discrimination." (internal quotation marks omitted)); *DeMuth v. U.S. Small Bus. Admin.*, 819 F. App'x 23, 25 (2d Cir. 2020) (summary order); *Tolbert v. Smith*, 790 F.3d 427, 434 (2d Cir. 2015). Under that framework, a plaintiff must first establish "a *prima facie* case of discrimination." *DeMuth*, 819 F. App'x at 25. To do so, he must show that "(1) []he belonged to a protected class; (2) []he was qualified for the position []he held; (3) []he suffered an adverse employment action; and (4) the adverse employment action occurred under circumstances giving rise to an inference of discriminatory intent." *Fischman v. Mitsubishi Chem. Holdings Am., Inc.*, 2023 WL 4763257, at *5 (S.D.N.Y. July 26, 2023) (citing *Brown v. City of Syracuse*, 673 F.3d 141, 150 (2d Cir. 2012); and *Terry v. Ashcroft*, 336 F.3d 128, 138 (2d Cir. 2003)). "To make out a Title VII discrimination claim, [plaintiff] must show some harm respecting an identifiable term or condition of employment." *Muldrow v. City of St. Louis, Missouri*, 601 U.S. 346, 354–55 (2024). He need not show that he suffered a materially adverse change in the terms and conditions of his employment or that the harm suffered was "significant." *See id.* at 355; *Back v. Hapoalim*, 2024 WL 4746263, at *2 (2d Cir. Nov. 12, 2024) (summary order).

Importantly, "a plaintiff is not required to plead a *prima facie* case under *McDonnell Douglas*, at least as the test was originally formulated, to defeat a motion to dismiss." *Vega*, 801 F.3d at 84. "[A]t the initial stage of a litigation, the plaintiff's burden is 'minimal'—he need only plausibly allege facts that provide 'at least minimal support for the proposition that the employer was motivated by discriminatory intent.'" *Id.* at 86–87 (quoting *Littlejohn v. City of New York*, 795 F.3d 297, 311 (2d Cir. 2015)). "An inference of discrimination can arise from circumstances including, but not limited to, 'the employer's criticism of the plaintiff's performance in [discriminatory] terms; or its invidious comments about others in the employee's protected group; or the more favorable treatment of employees not in the protected group; or the sequence of events leading to the plaintiff's discharge.'" *Littlejohn*, 795 F.3d at 312 (quoting *Leibowitz v. Cornell Univ.*, 584 F.3d 487, 502 (2d Cir. 2009)). Nevertheless, "a discrimination complaint . . . must [still] at a minimum assert nonconclusory factual matter sufficient to nudge its claims across the line from conceivable to plausible to proceed." *EEOC v. Port Auth. of N.Y. & N.J.*, 768 F.3d 247, 254 (2d Cir. 2014) (alterations and internal quotation marks omitted). Additionally, "the elements of a *prima facie* case may be used as a prism to shed light upon the plausibility of the claim." *Littlejohn*, 795 F.3d at 311 n.9 (internal quotation marks omitted); *accord Vega*, 801 F.3d at 84 n.7 (same).

Plaintiff has properly alleged that he is a member of a protected class and that he was qualified for the position he resigned from, having worked in the position for approximately five years. AC at 10. Defendants argue that Plaintiff has not alleged any adverse employment action and that the disciplinary proceedings against Plaintiff cannot constitute an adverse employment action because he chose not to contest the charges and instead resigned. Dkt. No. 61 at 17.

Defendants further argue that, even assuming he has alleged an adverse action, he has failed to raise even a minimal inference of discrimination. Dkt. No. 61 at 17.

To allege an adverse action in support of a discrimination claim, "[plaintiff] must show some harm respecting an identifiable term or condition of employment." *Muldrow*, 601 U.S. at 354–55. That harm need not be "significant or serious, or substantial." *Back*, 2024 WL 4746263, at *2 (quoting *Muldrow*, 601 U.S. at 355) (alterations accepted). The only allegations in the AC that are not time-barred and could be read to allege an adverse action are that Plaintiff received disciplinary charges of misconduct from DOF on October 31, 2022 and that Plaintiff "resigned under duress because of the overwhelming stress and anxiety DOF's disciplinary actions were causing."[6] AC ¶¶ 153, 174.

The initiation of disciplinary action, absent evidence that a plaintiff suffered some negative consequences or harm to the terms and condition of employment from such action, is insufficient to state an adverse action. *See Mitchell v. Planned Parenthood of Greater N.Y., Inc.*, 745 F. Supp. 3d 68, 91 (S.D.N.Y. 2024) ("mere admonition by a supervisor without any formal consequences is not an adverse employment action because it does not represent any disadvantageous change in the terms or conditions of the plaintiff's employment" (quoting *Rios v. Centerra Grp. LLC*, 106 F.4th 101, 112–13 (1st Cir. 2024))); *Jain v. Tulino*, 2025 WL 2774260, at *11 (S.D.N.Y. Sept. 29, 2025) (notice of potential disciplinary action and letters of warning insufficient to claim adverse action). Plaintiff resigned shortly following disciplinary charges and prior to any adverse consequences from those charges; the only impact on his

[6] As noted above, allegations of conduct prior to August 11, 2023 can provide context but cannot support a claim of discrimination. Plaintiff contests that his EEOC charge was filed on June 7, 2023. However, even accepting his pled date of April 29, 2023 as the date from which the statute of limitations should be calculated, only the disciplinary charges and his resignation can form the basis for a claim, as any conduct prior to July 3, 2022 is time-barred.

employment was the time he spent working with union representation and initially responding to the charges. That is insufficient to allege harm to the terms and conditions of his employment. *Cf. Walter v. Metro N. Commuter R.R.*, 2024 WL 4266261, at *5 (S.D.N.Y. Sept. 23, 2024) (fact of disciplinary charges alone insufficient; ensuing punishment for such charges does constitute adverse action). Plaintiff instead argues that through the issuance of disciplinary charges, Defendants constructively discharged his employment, and that discharge constitutes an adverse action. Dkt. No. 63 at 13; AC ¶ 176.

Constructive discharge "occurs when an employer, rather than directly discharging an individual, intentionally creates an intolerable work atmosphere that forces an employee to quit involuntarily." *Chertkova v. Conn. Gen. Life Ins. Co.*, 92 F.3d 81, 89 (2d Cir. 1996). The first part of that standard requires that the employer took "deliberate action" and "intended to create intolerable workplace conditions." *Whidbee v. Garzarelli Food Specialties, Inc.*, 223 F.3d 62, 73–74 (2d Cir. 2000); *see id.* (plaintiff has not alleged constructive discharge where defendant demonstrated an interest in retaining plaintiff). Courts have held that proof of intent requires something "beyond mere negligence or ineffectiveness," such as engaging in a pattern of baseless criticisms against a plaintiff or evincing a lack of concern about a plaintiff's complaints. *Id.* at 74 (collecting cases); *see id.* ("As ineffective or even incompetent as [employer's] handling of the matter may have been, it does not rise to the level of deliberate action required by our precedent."). The second part of the standard states that a work atmosphere is "intolerable" if it is "so difficult or unpleasant that a reasonable person in the employee's shoes would have felt compelled to resign." *Id.* at 73. "A constructive discharge is 'functionally the same as an actual termination' and . . . is considered an adverse employment action." *Dall v. St. Catherine of Siena Med. Ctr.*, 966 F. Supp. 2d 167, 177 (E.D.N.Y. 2013) (quoting *Pa. State Police v. Suders*,

542 U.S. 129, 148 (2004)); *see also Fitzgerald v. Henderson,* 251 F.3d 345, 357 (2d Cir. 2001) ("Adverse employment actions include discharge from employment. Such a discharge may be either an actual termination of the plaintiff's employment by the employer or a 'constructive' discharge.").

Resignation in the face of disciplinary charges, on its own, does not constitute constructive discharge. *See Dall*, 966 F. Supp. 2d at 177–78 ("In order to establish constructive discharge, it is not enough for a plaintiff to resign instead of facing potential disciplinary charges, nor is it enough for a plaintiff to fear termination" (first citing *Bailey v. N.Y.C. Bd. of Educ.*, 536 F. Supp. 2d 259, 266 (E.D.N.Y. 2007); and then citing *Massie v. Ikon Off. Sols., Inc.*, 381 F. Supp. 2d 91, 96–100 (N.D.N.Y. 2005))). The mere act of bringing disciplinary charges against an employee "does not, in itself, create an intolerable work atmosphere." *Bailey*, 536 F. Supp. 2d at 266 (holding that the fact that Board of Education brought charges against teacher pursuant to New York Education Law was insufficient to state constructive discharge claim). Nor do negative performance evaluations make working conditions intolerable. *See Carmellino*, 2006 WL 2583019, at *31 (S.D.N.Y. Sept. 6, 2006) (no reasonable jury could conclude that a negative lesson evaluation and negative annual evaluation made plaintiff's working conditions intolerable).

Threats of termination, however, may be sufficient to show constructive discharge. *Silverman v. City of New York*, 216 F. Supp. 2d 108, 115–16 (E.D.N.Y. 2002) ("[A] number of courts in this circuit have held that threats of termination may be sufficient to establish constructive discharge." (collecting cases)), *aff'd*, 64 F. App'x 799 (2d Cir. 2003) (summary order); *Valdes v. N.Y.C. Dep't of Env't Prot.*, 1997 WL 666279, at *3 (S.D.N.Y. Oct. 27, 1997) ("[A]n employer's clearly expressed desire that an employee resign has been held sufficient to

find a constructive discharge."). The sufficiency of such threats depends on whether the threats "were repeated, direct, or involved additional adverse conduct." *Dall*, 966 F. Supp. 2d at 178. *Compare Murray v. Town of N. Hempstead*, 853 F. Supp. 2d 247, 270 (E.D.N.Y. 2012) (no constructive discharge where employee heard rumor that supervisor wanted him terminated), *with McCalla v. SUNY Downstate Med. Ctr.*, 2006 WL 1662635, at *5 (E.D.N.Y. June 8, 2006) (plaintiff alleged adverse employment action where defendants told plaintiff that if he did not sign resignation letter, he would be fired and his career would be ruined).

It follows that disciplinary charges accompanied by threats of termination may be sufficient to constitute constructive discharge. For instance, "proof that an employee was presented with the decision to resign or be fired" in the face of disciplinary charges may create a triable issue of fact as to constructive discharge. *Dall*, 966 F. Supp. 2d at 178 (quoting *Rupert v. City of Rochester, Dep't of Env't Servs.*, 701 F. Supp. 2d 430, 440 (W.D.N.Y. 2010)). Similarly, indication that the disciplinary process had a predetermined outcome and would inevitably result in termination could support finding constructive discharge. *See id.* at 179 (holding that evidence supported constructive discharge where plaintiff was repeatedly told he would be terminated as a result of the investigation and told that if he resigned, the employer would discontinue the investigation and not place official finding against plaintiff in his folder). At the same time, the issuance of serious disciplinary charges that would result in termination if substantiated, in a sense threatening termination, is insufficient to constitute constructive discharge where a fair review process is available and the employee declines the opportunity to contest such charges. *See Stembridge v. City of New York*, 88 F. Supp. 2d 276, 284–85 (S.D.N.Y. 2000) (no constructive discharge where "[P]laintiff had the opportunity to present his side of the story in the scheduled disciplinary hearing. It is impossible to know whether the

hearing could have actually remedied the situation or address the . . . misconduct because plaintiff chose not to participate in the process."). Constructive discharge does not result "where an employee had an avenue through which he could seek redress for the allegedly 'intolerable' work atmosphere leading up to his resignation, but failed to take advantage thereof." *Silverman*, 216 F. Supp. 2d at 115–16 (collecting cases); *see id.* ("[T]he fact that [plaintiff] could have sought a hearing [under both his collective bargaining agreement and New York Civil Service Law § 75] before being terminated eviscerates his claim that threats of termination created an 'intolerable' situation."). The logic of this principle as applied to serious disciplinary charges is apparent:

> [P]ermitting a plaintiff to avoid contesting the charges . . . but nonetheless to proceed in litigation as if the charges were without merit and filed only for discriminatory reasons, would be wholly unwarranted. A plaintiff who chooses not to contest charges should not be treated as if she had successfully contested the charges.

*Kaplan-DiNola v. Bd. of Educ. of City Sch. Dist. of City of New York*, 2019 WL 5593286, at *3 (S.D.N.Y. Oct. 30, 2019). Put simply, a plaintiff cannot plead constructive discharge based on disciplinary charges she declined to contest, despite the opportunity to do so.

Here, Plaintiff argues that he was constructively discharged because the disciplinary enforcement process was "unethical" and "inexplicable." AC ¶¶ 175–78. Plaintiff's argument that the disciplinary process was unfair hinges on two sets of allegations: (1) that there was no basis for the disciplinary charges because he was never informed that performing outside work for KFORCE was misconduct and KFORCE had no business dealings with DOF during his public service, *id.* ¶¶ 167–70, and (2) that he was not informed, interviewed, or questioned regarding his conduct or provided with union representation prior to the issuance of the disciplinary charges, *id.* ¶ 158. As to the first, Plaintiff had an opportunity to dispute the basis for the charges at a hearing and chose to resign rather than pursue that opportunity. That he may

have been able to demonstrate the charges are faulty if he pursued the hearing cannot support a constructive discharge claim. *See Silverman*, 216 F. Supp. 2d at 116 (finding no constructive discharge because "if it were clear" that the charges were baseless, plaintiff could have "availed himself of his right to a hearing").

As to the second, Plaintiff has not alleged facts to support that he was denied a fair review process. Shortly following the charges, Plaintiff retained union representation and received information regarding the disciplinary charges from DOF enforcement attorney, Hantman. AC ¶¶ 159–62. Plaintiff further pleads communications from his union representative that indicate DOF intended to hold a hearing on the charges. *Id.* ¶ 165 (union representative asking Hantman why DOF was asking Plaintiff to participate in a hearing while on leave). Plaintiff asserts that this process violated Civil Service Law Section 75's provisions for disciplinary proceedings because he was not provided with representation or interviewed prior to the charges. However, Section 75 does not impose requirements for the issuance of charges; it instead provides that an employee subject to Section 75's protections shall not be subjected to any disciplinary penalty without a hearing upon stated charges. N.Y. Civ. Serv. L. § 75(1); *see id.* § 75(2) (outlining procedures for hearing). Plaintiff has pointed to no requirement that DOF provide him with information or representation prior to informing him of the disciplinary charges. The "overwhelming stress and anxiety" spurred by the disciplinary process cannot support a claim for constructive discharge. *See Gangemi v. Arch Oncology, Inc.*, 2023 WL 3687729, at *3 (S.D.N.Y. May 26, 2023) ("Being unfairly disciplined or threatened with termination is insufficient to show constructive discharge.").

Plaintiff's allegation that DOF was only seeking resignation as settlement of the disciplinary action is insufficient to indicate that his termination was a foregone conclusion such

that DOF sought to force Plaintiff's resignation. *See* AC ¶ 173. The court in *Dall v. St. Catherine of Siena Medical Center* addressed a similar allegation, but with a key distinction. *See* 966 F. Supp. 2d at 178–79. The court in *Dall* noted that plaintiff's employer "informed him that if he resigned first, she would discontinue her investigation"—an offer akin to the settlement at issue here. *Id.* at 179. However, in concluding that a reasonable jury could find constructive discharge, the court found it significant not simply that the investigation would cease if the plaintiff resigned, but that the plaintiff's employer repeatedly told him that he would be terminated following resolution of the investigation. *Id.* at 178. The person leading the investigation told the plaintiff's representative that the employer was "unequivocally seeking the termination" of plaintiff and told plaintiff directly that he would be terminated if he did not resign. *Id. at* 178–79. These allegations were sufficient for a jury to find "that Defendant decided to terminate him, and that he was forced to choose between resignation and termination." *Id.* at 178. Plaintiff has not presented similar allegations here. That DOF would only accept resignation as settlement of the issue does not indicate that Plaintiff would be terminated no matter the outcome of the investigation. Instead, it indicates that DOF would pursue the investigation and hearing, and would only agree to drop the disciplinary charges if Plaintiff resigned. That distinction is significant. On Plaintiff's allegations, termination was not a foregone conclusion; it was one of several possibilities. Hantman, the DOF attorney who told Plaintiff that resignation was the only settlement available, would not be the individual presiding over the hearing. *See* AC ¶ 165 (Plaintiff's union representative noting that no judge from OATH would calendar the hearing while Plaintiff is on leave); *cf. Green v. Town of East Haven*, 952 F.3d 394, 406 (2d Cir. 2020) (while "neither an absolute statement nor a direct communication by an ultimate decisionmaker is a *sine qua non* for evidence of a constructive

discharge," the "identity of the person delivering a termination threat or prediction" is relevant). Plaintiff prevented Defendants from coming to the other conclusions when he pretermitted the investigation and resigned.

Plaintiff's allegations do not support a plausible inference that a reasonable person in Plaintiff's shoes would have felt compelled to resign. *See Green*, 952 F.3d at 407. Plaintiff chose to resign rather than contest the disciplinary charges against him; his resignation does not constitute an adverse action under Title VII.

Even assuming Plaintiff has alleged an adverse employment action, he has not raised even a minimum inference of discrimination as to the disciplinary charges. An inference of discriminatory intent may "arise from circumstances including, but not limited to, 'the employer's criticism of the plaintiff's performance in ethnically degrading terms; or its invidious comments about others in the employee's protected group; or the more favorable treatment of employees not in the protected group; or the sequence of events leading to the plaintiff's discharge.'" *Littlejohn*, 795 F.3d at 312 (quoting *Leibowitz*, 584 F.3d at 502). "In analyzing whether remarks are probative of discriminatory animus or whether they are just stray remarks, courts assess '(1) who made the remark, i.e., a decisionmaker, a supervisor, or a low-level co-worker; (2) when the remark was made in relation to the employment decision at issue; (3) the content of the remark, i.e., whether a reasonable juror could view the remark as discriminatory; and (4) the context in which the remark was made, i.e., whether it was related to the decisionmaking process." *Pierre v. City of N.Y.*, 2020 WL 353538, at *8 (S.D.N.Y. Jan. 21, 2020), *aff'd*, 844 F. App'x 411 (2d Cir. 2021) (summary order) (quoting *Schreiber v. Worldco, LLC*, 324 F. Supp. 2d 512, 519 (S.D.N.Y. 2004)).

Plaintiff does not recite any comments by Defendants that are reflective of racial animus. He characterizes Desai's comments that he is "aggressive," "hard to deal with," and "suspect" as "stereotypical racial statements," AC ¶ 114, but these facially neutral comments are insufficiently tied with racial animus to raise an inference of discriminatory intent. *See Thelwell v. City of New York*, 2015 WL 454881, at *10–11 (S.D.N.Y. July 28, 2015) (recognizing that "[f]acially non-discriminatory terms" such as "welfare queen," "terrorist," and "thug" may "invoke racist concepts that are already planted in the public consciousness" but concluding that comments describing plaintiff, a Black woman, as "angry," "abrasive," and "aggressive" did not rise to the level of racial code words absent "evidence from context that the terms . . . were racially charged in any way"); *LeeHim v. N.Y.C. Dep't of Educ.*, 2017 WL 5634128, at *7 (S.D.N.Y. Nov. 21, 2017) (comments that plaintiff was "aggressive," "young," and "not a team player" without more could not support inference of discriminatory motivation); *cf. Payne v. N.Y.C. Police Dep't*, 863 F. Supp. 2d 169, 182 (E.D.N.Y. 2012) (comments linking "plaintiff's appearance to her perception of the appearance of criminals, arguably with reference to his race and religious hairstyle" and comments "denigrating his handling of suspects when the suspects wore dreadlocks" were sufficiently linked to racial stereotypes so as to "reflect[] discriminatory animus based on race, religion, and ethnicity"). They are terms that could be fairly used to criticize any employee. *Cf. Mootry v. Spotify USA Inc.*, 2026 WL 1971103, at *13 (S.D.N.Y. July 8, 2026) ("[C]riticism of an employee [alone] . . . is not an adverse employment action." (internal quotation marks and citation omitted)). Moreover, Plaintiff does not allege when such comments were made or to whom—he solely alleges that these statements are preserved in audio recordings. AC ¶ 114; *see Florence v. 72andSunny Partners, LLC*, 2026 WL 2254417, at *16 (S.D.N.Y. Aug. 5, 2026) (noting that even if alleged statement could reflect racial animus,

plaintiff did not raise an inference of discriminatory intent as to her termination because she did not allege "when the remark was made, who made it, or that it had any relation to the employment decisions").

Plaintiff instead relies on allegations that employees who were not in his protected class engaged in similar conduct—engaging in employment outside of the workplace—and did not face similar disciplinary charges. To raise a minimal inference of discrimination through disparate treatment, a plaintiff must allege "the more favorable treatment of employees not in the protected group" who are "similarly situated in all material respects." *Carris v. First Student, Inc.*, 682 F. App'x 30, 32 (2d Cir. 2017) (summary order) (first quoting *Littlejohn*, 795 F.3d at 312; then quoting *Brown v. Daikin Am. Inc.*, 756 F.3d 219, 230 (2d Cir. 2014)). "Significantly, at the pleading stage, a *pro se* plaintiff must only make a 'minimal showing of comparability.'" *Palmer v. Shchegol*, 406 F. Supp. 3d 224, 232 (E.D.N.Y. 2016) (quoting *Horsham v. Fresh Direct*, 136 F. Supp. 3d 253, 266 (E.D.N.Y. 2015)). Even so, he "must at least plead allegations from which it is plausible to conclude that the comparators are similarly situated." *Opuku v. Brega*, 2016 WL 5720807, at *9 (S.D.N.Y. Sept. 30, 2016).

Plaintiff points to two proposed white comparators—Paskus, the Assistant Commissioner, AC ¶ 183, and Voloshina, a Senior Software Developer, *id.* ¶ 119—who had outside employment and were not similarly disciplined. Paskus is not a similarly situated comparator. Plaintiff identifies him as his supervisor's manager's manager. *Id.* at 10. In other words, Paskus was three supervisory levels above Plaintiff's position. An employee of markedly different rank generally cannot serve as an appropriate comparator for disparate treatment. *See O'Hazo v. Bristol-Burlington Health Dist.*, 599 F. Supp. 2d 242, 259 (D. Conn. 2009) (supervisor "cannot be considered similarly situated" to plaintiff); *Opoku*, 2016 WL 5720807, at

*10 ("Plaintiff is not similarly situated . . . because they were Plaintiff's supervisors and had different responsibilities." (internal quotation marks and citation omitted)); *Dawson v. Hudson Valley DDSO/OPWDD*, 2015 WL 2330298, at *5 (S.D.N.Y. Apr. 14, 2015) ("supervisors are generally not considered materially similar to supervisees." (internal quotation marks and citation omitted)). "Although a supervisor may be similarly situated to a non-supervisor when both violate a policy applicable to *all* employees," *Dawson*, 2015 WL 2330298, at *5, Plaintiff has neither alleged that Paskus violated a policy against *unauthorized* outside work nor alleged that the policy under which he was disciplined applied to Paskus's conduct. Plaintiff alleges that Paskus engaged in outside employment by teaching a course as an adjunct professor in the Fall of 2024. Plaintiff thus has not alleged that he and Paskus "were subject to the same performance evaluation and disciplinary standards." *Brown*, 756 F.3d at 230.

Moreover, Plaintiff's allegations do not support a plausible inference that he and Paskus engaged in conduct of comparable seriousness. *See Graham*, 230 F.3d at 40 ("What constitutes 'all material respects'" includes "(1) whether the plaintiff and those he maintains were similarly situated were subject to the same workplace standards and (2) whether the conduct for which the employer imposed discipline was of comparable seriousness." (internal citation omitted)); *see Opoku*, 2016 WL 5720807, at *8 (S.D.N.Y. Sept. 30, 2016) (same in motion-to-dismiss context). "The determination that two acts are of comparable seriousness requires—in addition to an examination of the acts—an examination of the context and surrounding circumstances in which those acts are evaluated." *Graham*, 230 F.3d at 40; *accord McConkey v. Churchill Sch. & Ctr.*, 2026 WL 1328605, at *28 (S.D.N.Y. May 13, 2026). Paskus's alleged conduct was limited in scope—one course over a couple month period—in contrast to Plaintiff's freelance work which occurred from April 2021 up to his disciplinary charges in October 2022. Notably, Plaintiff does

not allege whether this employment was unauthorized or otherwise concealed from DOF. Absent such allegations, the Court cannot conclude that Plaintiff has raised a plausible inference that Paskus was similarly situated in all material respects. *Cf. Blige v. City Univ. of N.Y.*, 2017 WL 498580, at *10 (S.D.N.Y. Jan. 19, 2017) (granting motion to dismiss where "the dearth of detail" about allegedly comparable conduct "makes it impossible for this Court to conclude that the incident is at all comparable to the conduct for which Plaintiff was disciplined").

As to Voloshina, Plaintiff alleges that both he and Voloshina held the title "Senior Software Developer" and worked in the same group. AC ¶¶ 119, 121. He alleges that she had over thirty years of experience; he does not allege his level of experience. *Id.* ¶ 121. Even assuming that he and Voloshina were similarly situated in terms of roles and responsibilities, however, Plaintiff has not alleged that they engaged in conduct of comparable seriousness. Plaintiff alleges that he was hired as a freelancer by KFORCE in April 2021 to work remotely, and that he intentionally did not disclose this work because of how Desai responded to him informing him that he was a part-time master's student. AC ¶¶ 8, 12–13; *see id.* ¶ 8 (Desai expressing apprehension as to whether Plaintiff was following DOF policy by being a student).[7] In October 2022, over a year after commencing his freelance work, he received disciplinary charges for engaging in unauthorized outside work. In contrast, Plaintiff alleges that Voloshina told the majority of the ACRIS team that she was working as a Pilates instructor during her seven-month leave of absence and that on April 25, 2024, she taught eight Pilates classes on a workday, three of which were during work hours. *Id.* ¶¶ 126–27, 186–88. Crucially, Plaintiff alleges that Voloshina's outside work was disclosed and does not allege that it was unauthorized.

[7] Plaintiff alleges that he had been granted approval for outside self-employment by his previous manager, but does not specify when this approval occurred or whether such approval was for the same type of freelance work he was later disciplined for. *Id.* ¶ 14.

He alleges that she openly discussed her outside employment at work—in contrast to his decision to not disclose his outside employment. Plaintiff's allegations are insufficient to support even a plausible inference that Plaintiff and Voloshina engaged in comparably serious conduct. *Cf. Lee v. Delta Air Lines, Inc.*, 2026 WL 1879335, at *6 (S.D.N.Y. June 30, 2026) (purported comparators did not engage in comparable serious conduct because, though they allegedly also filed false accusations of assault and discrimination, they did not engage in "intentionally dishonest and insubordinate behavior").

Plaintiff's claim of discrimination under Title VII is therefore dismissed for failure to allege an adverse employment action and for failure to raise a minimum inference of discriminatory intent.

**IV. Hostile Work Environment**

Hostile work environment claims under Title VII arise when "the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently pervasive to alter the conditions of the victim's employment." *Kassner v. 2nd Ave. Delicatessen Inc.*, 496 F.3d 229, 240 (2d Cir. 2007) (quoting *Brennan v. Metro. Opera Ass'n*, 192 F.3d 310, 318 (2d Cir. 1999)) (internal quotation marks omitted); *see Alfano v. Costello*, 294 F.3d 365, 373 (2d Cir. 2002) (plaintiff must show that the "workplace was so severely permeated with discriminatory intimidation, ridicule, and insult that the terms and conditions of [his or her] employment were thereby altered"). A plaintiff must allege that the conduct "(1) was objectively severe or pervasive in that it created an environment that a reasonable person would find hostile or abusive; (2) created an environment that the plaintiff subjectively perceived as hostile or abusive; and (3) occurred because of the plaintiff's protected characteristic." *Sherman v. Fivesky, LLC*, 2020 WL 2136227, at *5 (S.D.N.Y. May 5, 2020). In other words, the "test has objective and subjective elements: the misconduct shown must be severe or pervasive enough to create an

objectively hostile or abusive work environment, and the victim must also subjectively perceive that environment to be abusive." *Alfano*, 294 F.3d at 374 (internal quotation marks and citations omitted). In determining objective hostility, courts should examine all of the circumstances "[including] the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 23 (1993). Of course, "[i]t is axiomatic that mistreatment at work . . . is actionable under Title VII only when it occurs because of an employee's . . . protected characteristic." *Brown v. Henderson*, 257 F.3d 246, 252 (2d Cir. 2001).

The Second Circuit has "cautioned against setting the bar too high" in the context of a motion to dismiss a claim of hostile workplace, and a plaintiff is therefore not required to recount an exhaustive list of specific acts that contributed to a hostile workplace. *Patane v. Clark*, 508 F.3d 106, 113 (2d Cir. 2007) (quoting *Terry*, 336 F.3d at 148). "At the motion to dismiss stage, . . . 'a plaintiff need only plead facts sufficient to support the conclusion that she was faced with harassment of such quality or quantity that a reasonable employee would find the conditions of her employment altered for the worse.'" *Cowan v. City of Mount Vernon*, 2017 WL 1169667, at *4 (S.D.N.Y. Mar. 28, 2017) (quoting *Patane*, 508 F.3d at 113). At the same time, however, the Supreme Court has instructed that Title VII does not enact "a general civility code for the American workplace." *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 80 (1998). "Title VII does not prohibit all verbal or physical harassment in the workplace; it is directed only at '*discriminat[ion]* . . . because of . . . [race].'" *Id.* (emphasis in original). "A hostile work environment is 'not one that is bad for all living things in a manner that happens to involve [characteristics of the protected class]; rather it is one that is discriminatorily hostile to an

employee based on his or her [membership in the protected class].'" *Bernstein v. N.Y.C. Dep't of Educ.*, 2020 WL 6564809, at *7 (S.D.N.Y. Nov. 9, 2020) (quoting *Krasner v. HSH Nordbank AG*, 680 F. Supp. 2d 502, 514 (S.D.N.Y. 2010) (Lynch, J., sitting by designation)); *accord McSweeney v. Cohen*, 776 F. Supp. 3d 200, 261–62 (S.D.N.Y. 2025).

As with Plaintiff's Title VII claim under a disparate impact theory, Plaintiff's hostile work environment claim as to conduct predating August 11, 2022 is time-barred. However, "'[a] charge alleging a hostile work environment claim . . . will not be time barred so long as acts which constitute the claim are part of the same unlawful employment practice and at least one act falls within the time period.'" *Davis-Garett*, 921 F.3d at 42 (quoting *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 117 (2002)). Incidents prior to August 11, 2022 thus can only be considered to the extent that they are "sufficiently related" to conduct occurring within the 300-day time period. *See Ball*, 627 F. Supp. 3d at 314. "[D]iscrete acts of discrimination or retaliation that occur outside the statutory time period, even if other acts of discrimination occurred within the statutory time period" cannot support a claim. *Patterson*, 375 F.3d at 220 (internal quotation marks and citation omitted). To determine whether allegations are sufficiently related, courts consider whether "the acts before and after the limitations period were so similar in nature, frequency, and severity that they must be considered to be part and parcel of the hostile work environment." *Maynard v. Montefiore Med. Ctr.*, 2021 WL 396700, at *13 (S.D.N.Y. Feb. 4, 2021) (quoting *Batista v. Waldorf Astoria*, 2015 WL 4402590, at *6 (S.D.N.Y. July 20, 2015)).

The only alleged conduct occurring within the limitations period are the disciplinary charges brought against Plaintiff for his unauthorized outside-of-work employment and his resignation. The disciplinary charges, on their own, cannot support a hostile work environment

claim. *See Kennedy v. J.P. Morgan Chase & Co.*, 325 F. Supp. 2d 401, 409 (S.D.N.Y. 2004) ("[A] single incident will not support a claim of hostile work environment unless the 'single incident is extraordinarily severe.'" (quoting *Williams v. N.Y.C. Hous. Auth.*, 154 F. Supp. 2d 820, 823 (S.D.N.Y. 2001))). However, Plaintiff's allegations regarding the close scrutiny of Plaintiff's timesheet, location, and work output are sufficiently related to the later disciplinary charges "to be part of the same alleged hostile work environment practice." *McGullam v. Cedar Graphics, Inc.*, 609 F.3d 70, 77 (2d Cir. 2010). Plaintiff alleges that such conduct occurred from late February 2022 until his departure for leave on July 1, 2022, a few months prior to receiving the disciplinary charges. *See generally* AC ¶¶ 49–53, 69–103, 125. Plaintiff further alleges that Desai perpetrated the close scrutiny of his work, initiated complaints with various DOF departments, and discussed potential disciplinary charges with DOF General Counsel Lieberman. *Id.* ¶ 69. Such allegations support the plausible inference that Plaintiff's disciplinary charges within the limitations period are sufficiently related to Desai's prior scrutiny and close monitoring of Plaintiff's work. *See Dikambi v. City Univ. of N.Y.*, 2021 WL 4198252, at *4 (S.D.N.Y. Sept. 14, 2021) (single incident within limitations period was sufficiently related to prior harassment where, *inter alia*, it was perpetrated by the same supervisor); *Perez v. City of New York*, 2024 WL 898943, at *11 (S.D.N.Y. Feb. 29, 2024) (noting "temporal discontinuity" as a factor in assessing relatedness); *Carter-Marks v. Alstom Transp. USA Inc.*, 800 F. Supp. 3d 423, 452 (E.D.N.Y. 2025) (claims were sufficiently related where they each recount incidents of intimidating or threatening behavior perpetrated by the same people); *cf. Villar v. City of New York*, 135 F. Supp. 3d 105, 132 (S.D.N.Y. 2015) (twenty-one month gap between incidents "would make it less plausible that the conduct is sufficiently related to constitute a continuing violation").

However, even considering pre-August 2022 conduct to be part of a practice of overly-strict enforcement that led to disciplinary charges, such conduct is insufficient to support a claim that Plaintiff experienced a severe or pervasive hostile work environment due to race. Although "improper, unfair, or false discipline can contribute to a hostile work environment so long as the disciplinary action was connected to Plaintiff's protected characteristics," *Kirkland-Hudson v. Mount Vernon City Sch. Dist.*, 665 F. Supp. 3d 412, 466 (S.D.N.Y. 2023), Plaintiff has not alleged that Desai's conduct in monitoring Plaintiff's time sheets, checking that Plaintiff was at his desk, and declining to approve leave requests without documentation reached beyond a level of simply overzealous management or had any connection to his race. *See Costello v. N.Y.S. Nurses Ass'n*, 783 F. Supp. 2d 656, 680 (S.D.N.Y. 2011) (allegation that plaintiff was "inundated with emails and micromanaged by her supervisors" and that her supervisors' management style was "overzealous, overbearing, or even oppressive" "is simply not enough to render an environment hostile under Title VII"). Nor can Desai's "snark remarks" or characterization of Plaintiff as "hard to deal with" or "suspect" support a claim. *See Littlejohn*, 795 F.3d at 321 (allegations insufficient to support claim where, *inter alia*, plaintiff alleged that supervisor "made negative statements" about plaintiff, "was impatient and used harsh tones," "declined to meet with" plaintiff, and "wrongfully reprimanded" plaintiff); *Davis-Molina v. Port Auth. of N.Y. & N.J.*, 2011 WL 4000997, at *11 (S.D.N.Y. Aug. 19, 2011), *aff'd*, 488 F. App'x 530 (2d Cir. 2012) (summary order) (at summary judgment, evidence that, *inter alia*, supervisors excluded her from meetings, avoided her in the office, "yell[ed] and talk[ed] down to her like she was an idiot," and "belittled her" was insufficient to support a claim); *cf. Leviant v. City of N.Y. Human Res. Admin.*, 625 F. Supp. 2d 85, 98 (S.D.N.Y. 2008) (frequent disparaging remarks regarding plaintiff's national origin and native language, in addition to excessive monitoring, sufficient for

hostile work environment claim). Where "[t]he gravamen of [a plaintiff's] claim[] is rooted in conduct that amounts to nothing more than workplace dynamics—that is, personal enmity or personality conflicts," he has not stated a claim for hostile work environment. *Davis-Molina*, 2011 WL 4000997, at *11; *Eugene v. City of New York*, 2026 WL 1831351, at *11 (S.D.N.Y. June 25, 2026) (allegations that employer made condescending remarks and acted dismissively towards plaintiff insufficient to state a claim of hostile work environment).

Plaintiff's claim of hostile work environment is therefore dismissed.

## V. Claims Under the ADA

### A. Discrimination

The ADA prohibits "discriminat[ion] against a qualified individual on the basis of disability in regard to . . . [the] terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a). "Claims alleging disability discrimination in violation of the ADA are subject to the burden-shifting analysis originally established by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)." *McMillan v. City of New York*, 711 F.3d 120, 125 (2d Cir. 2013) (quoting *McBride v. BIC Consumer Prods. Mfg. Co.*, 583 F.3d 92, 96 (2d Cir. 2009)). Under this framework, a plaintiff must first establish a *prima facie* case of discrimination under the ADA by demonstrating that: "(1) the defendant is covered by the ADA; (2) plaintiff suffers from or is regarded as suffering from a disability within the meaning of the ADA; (3) plaintiff was qualified to perform the essential functions of the job, with or without reasonable accommodation; and (4) plaintiff suffered an adverse employment action because of his disability or perceived disability." *Kinneary v. City of New York*, 601 F.3d 151, 156 (2d Cir. 2010) (quoting *Capobianco v. City of New York*, 422 F.3d 47, 56 (2d. Cir. 2005)). At the pleading stage, a plaintiff "need only give plausible support to a minimal inference of discriminatory motivation" and "need not give plausible support to the ultimate question of

whether the adverse employment action was attributable to discrimination." *Littlejohn*, 795 F.3d at 311; *Dawson v. N.Y.C. Transit Auth.*, 624 F. App'x 763, 767 (2d Cir. 2015) (summary order) (applying the *Littlejohn* standard in reviewing the district court's dismissal of a plaintiff's ADA complaint).

Defendants move to dismiss Plaintiff's claim of discrimination under the ADA for similar reasons as to his Title VII claim: Plaintiff has failed to allege an adverse employment action within the limitations period and, even if he has alleged actionable adverse action, he has failed to allege a plausible connection between such action and his disability. Dkt. No. 61 at 16–17. Defendants additionally move to dismiss Plaintiff's ADA claim for failure to allege that he suffered from a disability within the meaning of the ADA. Dkt. No. 61 at 21.

For the reasons stated above in regard to Plaintiff's Title VII claim, Plaintiff has not alleged that he suffered an adverse employment action under the ADA. *See Smith*, 385 F. Supp. 3d at 343 ("The definition of an 'adverse employment action' in the context of disability-based discrimination is the same as in the context of race-based discrimination."); *Richards v. Dep't of Educ. of City of N.Y.*, 2022 WL 329226, at *13 (S.D.N.Y. Feb. 2, 2022) (where plaintiff fails to allege adverse action for Title VII claim, she also fails to plead adverse action for ADA claim). This conclusion is not altered if *Muldrow*'s more permissive standard for alleging an adverse action under Title VII is not extended to claims of discrimination under the ADA. *See Khademi v. Aanika Biosciences, Inc.*, 2025 WL 1787046, at *7 (E.D.N.Y. June 28, 2025) (noting that "the Second Circuit has not yet clarified whether the standard for an adverse employment action under the ADA also changed following the Supreme Court's decision in *Muldrow*"); *Hayes v. G&E Real Est. Mgmt. Servs.*, 2025 WL 769162, at *12 (S.D.N.Y. Mar. 11, 2025) (describing *Muldrow* as "loosening the adverse action standard for discrimination claims").

As with Plaintiff's Title VII claim, even assuming Plaintiff has alleged an adverse employment action due to the disciplinary charges, Plaintiff has not alleged facts to plausibly raise a minimal inference of discriminatory motivation based on disability. As an initial matter, Plaintiff's claimed disability is anxiety due to potential COVID-19 exposure at work affecting his young daughter at home, AC ¶¶ 19, 26 (noting "great deal of anxiety" from working in-person due to 6-month-old daughter), and Plaintiff's "personal health choice" to not be vaccinated, *id.* ¶¶ 21–27. Dkt. No. 63 at 16. Neither Plaintiff's anxiety about contracting COVID-19 nor his decision to be unvaccinated constitutes a disability under the ADA. *See Gonzalez v. City of New York*, 2024 WL 1332546, at *8 (E.D.N.Y. Mar. 28, 2024) ("neither contracting COVID-19 nor being unvaccinated are considered disabilities under 42 U.S.C. § 12102(3)(A)"); *cf. Librandi v. Alexion Pharm., Inc.*, 2023 WL 3993741, at *7 (D. Conn. June 14, 2023) (employer keeping record of unvaccinated employees does not indicate that employer recorded plaintiff as having a disability (collecting cases)).[8] Moreover, even if Plaintiff had pled facts sufficient to give rise to the inference his anxiety rose to the level of a disability under the ADA, *see Dinome v. Cordis US Corp.*, 2024 WL 3888799, at *9 (S.D.N.Y. Aug. 21, 2024) ("Depression and anxiety can constitute a disability under the ADA if it substantially limits a major life activity."), Plaintiff has pled no allegations to support the conclusion that the disciplinary charges were motivated by discriminatory intent based on Plaintiff's alleged disability. *See* Dkt. No. 63 at 17 (solely arguing that he has stated a claim under the ADA due to Defendants' refusal to approve his work-from-home request).

---

[8] To the extent Plaintiff seeks to bring a failure-to-accommodate claim under the ADA based on Defendants' denial of his request to work from home, such claim is time-barred. Plaintiff requested to work from home in September 2021, at which time his request was denied. AC ¶¶ 18–25. Plaintiff makes no allegations that he sought accommodations which were denied within the limitations period.

**B. Retaliation**

The ADA prohibits retaliation against an individual who "has opposed any act or practice made unlawful by this chapter." 42 U.S.C. § 12203(a). "Like discrimination claims, retaliation claims are analyzed using the *McDonnell Douglas* burden-shifting framework." *Frantti v. New York*, 850 F. App'x 17, 21 (2d Cir. 2021) (summary order) (citing *Lovejoy-Wilson v. NOCO Motor Fuel, Inc.*, 263 F.3d 208, 223 (2d Cir. 2001)). "To establish a prima facie case of retaliation, [a plaintiff] must show that: '(1) he engaged in an activity protected by the ADA; (2) the employer was aware of this activity; (3) the employer took adverse employment action against him; and (4) a causal connection exists between the alleged adverse action and the protected activity.'" *Id.* (quoting *Treglia v. Town of Manlius*, 313 F.3d 713, 719 (2d Cir. 2002)). "Once a plaintiff establishes a prima facie case, the burden then shifts to the defendant to articulate a legitimate non-retaliatory reason for the challenged employment action." *Id.* "If the defendant meets the burden, the plaintiff must adduce evidence 'that would be sufficient to permit a rational factfinder to conclude that the employer's explanation is merely a pretext for impermissible retaliation.'" *Id.* (quoting *Treglia*, 313 F.3d at 721).

"[M]aking a good faith request for an accommodation is a protected activity." *Norman*, 492 F. Supp. 3d at 166 (citing *Weixel v. Bd. of Educ. of City of N.Y.*, 287 F.3d 138, 149 (2d Cir. 2002)); *see also Rodriguez v. Atria Sr. Living Grp., Inc.*, 887 F. Supp. 2d 503, 512 (S.D.N.Y. 2012). Complaining to a supervisor, initiating litigation, or filing a formal complaint about the defendant's discriminatory conduct are each considered protected activities. *See Ruiz v. City of New York*, 2015 WL 5146629, at *6 (S.D.N.Y. Sept. 2, 2015). A complaint to a supervisor need not have had merit to make it a protected activity. *See Lore v. City of Syracuse*, 670 F.3d 127, 157 (2d Cir. 2012). Instead, an employee's complaint must only be "sufficiently pointed to be reasonably understood as a complaint [about] discrimination," *Cardwell v. Davis Polk &*

*Wardwell LLP*, 2020 WL 6274826, at *31 (S.D.N.Y. Oct. 24, 2020) (internal quotation marks and citations omitted), and the employee must have a "good faith, reasonable belief that the underlying employment practice was unlawful." *Symotyuk-Knoll v. HealthEquity, Inc.*, 2023 WL 5576405, at *5 (S.D.N.Y. Aug. 29, 2023) (cleaned up) (quoting *Reed v. A.W. Lawrence & Co.*, 95 F.3d 1170, 1178 (2d Cir. 1996)).

"[T]he harm element of a retaliation claim is not to be analyzed in the same way as the harm from an alleged substantive act of discrimination." *Ahmad v. New York City Health & Hosps. Corp.*, 2021 WL 1225875, at *26 (S.D.N.Y. Mar. 31, 2021) (quoting *Davis-Garett*, 921 F.3d at 43–44). In the context of a retaliation claim, "an adverse employment action is any action that 'could well dissuade a reasonable worker from making or supporting a charge of discrimination.'" *Vega*, 801 F.3d at 90 (quoting *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 57 (2006)). "Unlike discrimination claims . . . , an adverse employment action for a retaliation claim is 'not limited to discriminatory acts that affect the terms and conditions of employment.'" *Williams v. Samaritan Daytop Vill. Woodside Senior Ctr.*, 2025 WL 850547, at *7 (S.D.N.Y. Jan. 29, 2025) (quoting *Burlington N.*, 548 U.S. at 64)).

"A causal connection between protected activity and the adverse employment action can be shown either '(1) indirectly, by showing that the protected activity was followed closely by discriminatory treatment, or through other circumstantial evidence such as disparate treatment of fellow employees who engaged in similar conduct; or (2) directly, through evidence of retaliatory animus directed against the plaintiff by the defendant.'" *Littlejohn*, 795 F.3d at 319. In drawing the inference of a causal relationship between the protected activity and the adverse employment action, the time elapsed between the two matters. *See Bamba v. U.S. Dep't of Homeland Sec.*, 2024 WL 3924810, at *18 (S.D.N.Y. Aug. 23, 2024) ("Although generally a gap

of more than two to three months will therefore defeat an inference of causation, this is not a bright-line rule." (citing *Massaro v. N.Y.C. Dep't of Educ.*, 2022 WL 1788203, at *2 (2d Cir. June 2, 2022) (summary order))). "There can be no inference of retaliation where the protected activity occurred after the adverse employment action." *Richards*, 2022 WL 329226, at *17 (quoting *Pinero v. Long Island State Veterans Home*, 375 F. Supp. 2d 162, 168 (E.D.N.Y. 2005)).

Defendants argue that Plaintiff's claim of retaliation under the ADA should be dismissed for failure to allege a disability within the meaning of the ADA and for failure to allege a plausible connection between his request for a remote-work accommodation in September 2021 and the disciplinary charges brought against him on October 31, 2022. Dkt. No. 61 at 19–20.

"In the context of an ADA retaliation claim—even if a plaintiff is mistaken about whether he suffers from a 'disability' for purposes of the ADA—plaintiff may succeed in pleading a retaliation claim if he plausibly alleges that he had a 'good faith, reasonable belief that the underlying challenged actions of the employer violated [the ADA]'" by discriminating against plaintiff due to his disability. *Suarez v. N.Y. Cnty. District Attorney's Off.*, 2025 WL 894516, at *15 (S.D.N.Y. Mar. 24, 2025) (quoting *Muller v. Costello*, 187 F.3d 298, 311 (2d Cir. 1999)); *Rodriguez v. N.Y.C. Dep't of Educ.*, 2022 WL 4484576, at *9 n.13 (S.D.N.Y. Sept. 26, 2022) (finding that the fact that a plaintiff has not alleged "an actual disability under the ADA . . . is not necessarily fatal to the ADA retaliation claim"). Plaintiff has alleged a reasonable belief that his request for an accommodation and underlying impairment were covered by the ADA. *See* AC ¶ 20 (alleging that a medical professional recommended accommodation to account for his anxiety due to COVID-19 exposure); *id.* ¶ 25 (noting that he had an abnormal ECG report on September 19, 2021). That is sufficient to allege protected

activity under the ADA. *Teachout v. N.Y.C. Dep't of Educ.*, 2006 WL 452022, at *13 n.20 (S.D.N.Y. Feb. 22, 2006) ("The fact that [plaintiff's] accommodation request was related to an impairment—his diabetes—that is not a disability as defined by the ADA does not render that request unprotected. It is enough that [plaintiff] had a good faith belief that his request and the underlying impairment were covered by the ADA."); *Suarez*, 2025 WL 894516 at *17 ("[R]equests for accommodation constitute protected activity under the ADA." (internal quotation marks and citation omitted)).

Even assuming the disciplinary charges constitute an adverse action for purposes of Plaintiff's ADA retaliation claim, Plaintiff has not alleged a plausible causal connection between his protected activity and the disciplinary charges.[9] "Causation [in the context of pleading a retaliation claim] can be sufficiently established through temporal proximity." *Suarez*, 2025 WL 894516, at *17 (S.D.N.Y. Mar. 24, 2025) (quoting *Craven v. City of New York*, 2023 WL 3097434, at *5 (S.D.N.Y. Apr. 26, 2023)). However, "most courts in the Second Circuit have held that a lapse of time beyond two or three months will break the causal inference." *De Figueroa v. New York*, 403 F. Supp. 3d 133, 157 (E.D.N.Y. 2019) (citing *Walder v. White Plains Bd. of Educ.*, 738 F. Supp. 2d 483, 503–04 (S.D.N.Y. 2010) (collecting cases)). Here, Plaintiff made his accommodation request in September 2021. AC ¶ 19. The disciplinary charges were issued over a year later, on October 31, 2022. *Id.* ¶ 153. A lapse of over a year breaks any causal inference, and Plaintiff has pled no other allegations that would support an inference of causation. *See D'Alessio v. Charter Commc'ns, LLC*, 2020 WL 5638721, at *7 (E.D.N.Y. Sept.

[9] Only the disciplinary charges brought against Plaintiff can provide a basis for his claim of retaliation. Earlier conduct that Plaintiff characterizes as retaliatory is time-barred. *See supra* I.

21, 2020) ("[A] temporal gap of over a year [between request for accommodation and adverse action] is too attenuated to support a causal inference.").[10]

Plaintiff's claims of discrimination and retaliation under the ADA are therefore dismissed.

## VI. Claims Under the FMLA

The FMLA gives eligible employees an "entitlement" to twelve work weeks of unpaid leave per year due to childbirth, adoption, serious health conditions, or care responsibilities. 29 U.S.C. § 2612(a)(1); *see Robbins v. Candy Digit., Inc.*, 2024 WL 5056429, at *4 (S.D.N.Y. Dec. 9, 2024); *Reilly v. Revlon, Inc.*, 620 F. Supp. 2d 524, 534 (S.D.N.Y. 2009). It is "unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided" by the FMLA. 29 U.S.C. § 2615(a)(1). Section 2615(a)(2) makes it unlawful "for any employer to discharge or in any other manner discriminate against any individual for opposing any practice made unlawful by this subchapter." 29 U.S.C. § 2615(a)(2). Any employer who violates Section 2615 is liable in a private action to "any eligible employee" affected for both actual and liquidated damages and attorneys' fees. *Id.* § 2617(a).

Claims of unlawful retaliation and interference under the FMLA both assert violation of Section 2615(a)(1) of the FMLA. *See Woods v. START Treatment & Recovery Ctrs., Inc.*, 864 F.3d 158, 166–67 (2d Cir. 2017) (clarifying that retaliation claims fall under this provision); *accord Robbins*, 2024 WL 5056429, at *6. "Although interference and retaliation claims may 'overlap in some situations,' they are not interchangeable[.]" *Robbins*, 2024 WL 5056429, at *6

---

[10] The AC does not plead retaliation under Title VII as a cause of action, but to the extent the AC could be read to include such a claim, Plaintiff has alleged no protected activity under that statute. *See* AC ¶ 134 (protesting retaliation for taking leave; no allegation that he raised a complaint of discrimination); *Sumner v. U.S. Postal Serv.*, 899 F.2d 203, 209 (2d Cir. 1990) (protected activity under Title VII includes "informal protests of discriminatory employment practices, including making complaints to management").

(quoting *Colburn v. Parker Hannifin/Nichols Portland Div.*, 429 F.3d 325, 330 (1st Cir. 2005)); *see Woods*, 864 F.3d at 166–67. "In a general sense, an employee brings an 'interference' claim when her employer has prevented or otherwise impeded the employee's ability to exercise rights under the FMLA." *Woods*, 864 F.3d at 166. "'Retaliation' claims, on the other hand, involve an employee actually exercising her rights or opposing perceived unlawful conduct under the FMLA and then being subjected to some adverse employment action by the employer." *Id.*

As a preliminary matter, the Court clarifies the period of leave at issue for Plaintiff's FMLA claims. Plaintiff alleges three periods of childcare leave which were taken pursuant to distinct statutes or policies. The first, from November 3, 2021 to January 22, 2022, was taken under New York's PFL. The second, from December 27, 2021 to February 3, 2022[11] was taken under the FMLA and ran concurrently with Plaintiff's PFL leave for the period from December 27, 2021 to January 22, 2022. The third, from July 1, 2022 until Plaintiff's resignation on December 15, 2022, was taken pursuant to Plaintiff's eligibility for unpaid childcare leave as a member of the DC 37 Local 2627 union. AC ¶ 60. The FMLA's provisions only protect Plaintiff's exercise of his rights under the FMLA, and Plaintiff's entitlement to leave under the FMLA due to the birth of his daughter expired on March 28, 2022, a year after her date of birth. 29 U.S.C. § 2612(2); *see McGuiness v. E.W. Indus.*, 857 F. Supp. 2d 259, 265 (E.D.N.Y. 2012) ("Any action taken in retaliation thereto [as to ongoing leave not protected under the FMLA] is

[11] Plaintiff alleges that he returned to the office from PFL/FMLA leave on February 3, 2022 but elsewhere alleges that his period of FMLA leave was "still active" until March 18, 2022. AC at 55. While it is possible that Plaintiff returned to the office on February 3, 2022 but thereafter took intermittent leave, *McGuiness v. E.W. Indus*, 857 F. Supp. 2d 259, 264 (E.D.N.Y. 2012) ("In addition to taking the full leave allowed by the FMLA, an employee may take 'intermittent' leave under the statute."), Plaintiff does not allege that he worked with a reduced schedule or took intermittent leave under the FMLA. His phrasing that the leave was "still active" likely reflects that March 18, 2022 is twelve weeks following the start of his period of FMLA leave.

accordingly not actionable as FMLA retaliation."). Accordingly, Plaintiff's FMLA claims can only be premised on interference with his FMLA leave from December 27, 2021 to February 3, 2022 and on retaliation as to that period of leave.

### A. Interference

To establish an FMLA interference claim, "a plaintiff need only prove that an 'employer in some manner impeded the employee's exercise of his or her rights' protected . . . by the FMLA." *Crosby v. Stew Leonard's Yonkers LLC*, 695 F. Supp. 3d 551, 576 (S.D.N.Y. 2023) (alteration adopted) (quoting *Sista v. CDC Ixis N. Am., Inc.*, 445 F.3d 161, 176 (2d Cir. 2006)). At the pleading stage, a plaintiff must allege that: (1) he is an eligible employee under the FMLA; (2) the defendant is an employer as defined by the FMLA; (3) the plaintiff was entitled under the FMLA to take leave; (4) the plaintiff gave the employer notice of his intention to take leave; and (5) the defendant denied or otherwise interfered with benefits to which the plaintiff was entitled under the FMLA. *See Patel v. NYU Langone Hosps.*, 2021 WL 4852426, at *3 (2d Cir. Oct. 19, 2021) (summary order) (citing *Graziadio v. Culinary Inst. of Am.*, 817 F.3d 415, 424 (2d Cir. 2016)).

Defendants do not argue that Plaintiff failed to allege the first four elements of an interference claim and only contest that Plaintiff's AC fails to allege that Defendants interfered with his exercise of benefits to which he was entitled under the FMLA. Dkt. No. 61 at 22 n.14. Defendants argue that since Plaintiff was granted leave under the FMLA and took such leave, he cannot allege interference with his benefits. *Id.* Plaintiff argues that Defendants interfered with his FMLA leave because he was asked to complete work assignments while on leave and that he did so "out of fear of retaliation." AC ¶¶ 29–30; Dkt. No. 63 at 18–19.

An employer's grant of FMLA leave does not preclude a claim of FMLA interference. "[A]n employer can violate the FMLA merely by interfering with the employee's benefits under

the FMLA without actually denying the employee's request for those benefits." *Kemp v. Regeneron Pharms., Inc.*, 117 F.4th 63, 69 (2d Cir. 2024). An employer who grants an employee requested leave may unlawfully interfere with FMLA benefits by discouraging the employee from taking the approved leave, *see Kemp*, 117 F.4th at 69; *Puris v. TikTok Inc.*, 2025 WL 343905, at *12 (S.D.N.Y. Jan. 30, 2025) (plaintiff stated a claim where she alleged that employer told her taking leave would impact her compensation), forcing him or her to work while on approved leave, *see Zahler v. Empire Merchs., LLC*, 2012 WL 273698, at *8 (E.D.N.Y. Jan. 31, 2012) (employer interfered by threatening plaintiff's job if she refused to complete assignment while in hospital caring for father), or pressuring the employee to return from approved leave early, *see Ziccarelli v. N.Y.U. Hosp. Ctr.*, 247 F. Supp. 3d 438, 446–47 (S.D.N.Y. 2017) (plaintiff alleged interference where defendants sent him work assignments while on leave, pressured him to return from leave, and forced him to work long hours upon return despite agreement to limited hours). Likewise, an employer who permits an employee to take leave in name only or who impedes the employee's ability to enjoy the leave may be deemed to have interfered with the employee's FMLA benefits. *See, e.g.*, *Zahler*, 2012 WL 273698, at *9 (plaintiff alleged interference where employer "'repeatedly' demanded that [plaintiff] use her computer to produce work product and send the work product to him" while on leave). An employer cannot give an employee FMLA leave and then require the employee to work from home during that leave. *See Reilly v. Revlon, Inc.*, 620 F. Supp. 2d 524, 537 (S.D.N.Y. 2009); *Supino v. SUNY Downstate Med. Ctr.*, 2021 WL 4205181, at *12 (E.D.N.Y. Mar. 15, 2021).

At the same time, requests to complete work assignments while on leave do not invariably interfere with FMLA benefits. *See Catania v. NYU Langone Health Sys.*, 2022 WL 17539121, at *5 (S.D.N.Y. Dec. 5, 2022) (requirement that employee finalize a presentation and

be continuously available for meetings on a single date while on leave did not constitute interference). "Fielding occasional calls about one's job while on leave is a professional courtesy that does not abrogate or interfere with the exercise of an employee's FMLA rights." *Reilly*, 620 F. Supp. 2d at 537. Similarly, "[p]hone calls to an employee recuperating at home without acute distress, 'limited to the scope of passing on institutional knowledge to new staff, or providing closure on completed assignments' do not violate the FMLA." *Zahler*, 2012 WL 273698, at *8 (quoting *Reilly*, 620 F. Supp. 2d at 537); *see also Rivera v. Pratt (Quality Carton), LLC*, 822 F. Supp. 3d 394, 403 (S.D.N.Y. 2026) (evidence that plaintiff had to "perhaps occasionally respond[] to simple work-related questions via text" "falls far short" of interfering with FMLA leave); *Boncoeur v. Haverstraw-Stony Point Cent. Sch. Dist.*, 2022 WL 845770, at *13 (S.D.N.Y. Mar. 22, 2022) (employer sent two harassing emails to employee at start of leave stating he wanted to speak with plaintiff about a project when he returned from leave and asking for school district records and passwords).

Plaintiff has not alleged sufficient intrusion on his FMLA leave to state a claim for FMLA interference. Plaintiff's barebones allegations do not permit a plausible inference that Defendants' requests fell into the category of unlawful intrusions. Plaintiff alleges merely that he was required to complete work assignments during some portion of his leave. He does not allege that he was required to do so during his FMLA leave or anything about the nature or frequency or extent of the work. For all Plaintiff has pled, such requests could have been simple inquiries required to permit other employees to complete Plaintiff's work or clarify existing assignments. *See Reilly*, 620 F. Supp. 2d at 537 (asking "some-work-related questions on the telephone" absent "evidence that they were frequent or of long duration" cannot support claim of

interference). Absent additional allegations as to the scope or frequency of the assignments, the Court cannot conclude that Plaintiff has stated a claim for FMLA interference.

Defendants' motion to dismiss Plaintiff's claim of interference under the FMLA is granted.

**B. Retaliation**

"To establish a prima facia case of FMLA retaliation, a plaintiff must establish that (1) 'he exercised rights protected under the FMLA,' (2) 'he was qualified for his position,' (3) 'he suffered an adverse employment action,' and (4) 'the adverse employment action occurred under circumstances giving rise to an inference of retaliatory intent.'" *Donnelly v. Greenburgh Cent. Sch. Dist. No. 7*, 691 F.3d 134, 147 (2d Cir. 2012) (quoting *Potenza v. City of New York*, 365 F.3d 165, 168 (2d Cir. 2004)); *accord Graziadio v. Culinary Inst. of Am.*, 817 F.3d 415, 429 (2d Cir. 2016). "Retaliation claims under the FMLA are analyzed using the burden-shifting framework established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)." *Robbins*, 2024 WL 5056429, at *6 (citing *Graziadio*, 817 F.3d at 429). A retaliation claim "require[s], as a threshold issue, that the plaintiff be an 'eligible employee' within the meaning of the statute, as an employer is only liable to 'any eligible employee.'" *Id.* (quoting 29 U.S.C. § 2617(a)(1)). Where a plaintiff is granted leave under the FMLA, that plaintiff has exercised rights protected under the FMLA. *Kirkland-Hudson*, 665 F. Supp. 3d at 470.

"For the purposes of the FMLA's anti-retaliation provision, a materially adverse action is any action by the employer that is likely to dissuade a reasonable worker in the plaintiff's position from exercising his legal rights." *Millea v. Metro-North R. Co.*, 658 F.3d 154, 164 (2d Cir. 2011). The standard is identical to that under Title VII. *Id.* "Petty slights, minor annoyances, and simple lack of good manners will not give rise to actionable retaliation claims." *Id.* at 165 (cleaned up). As to the fourth *prima facie* factor, inference of retaliatory intent, but-for

causation is not required under the FMLA. *Woods*, 864 F.3d at 169. Plaintiff must allege a causal connection between the protected activity and the adverse action, and such connection can be shown "(1) indirectly, by showing that the protected activity was followed closely by discriminatory treatment, or through other circumstantial evidence such as disparate treatment of fellow employees who engaged in similar conduct; or (2) directly, through evidence of retaliatory animus directed against the plaintiff by the defendant." *Natofsky*, 921 F.3d at 348 (quoting *Littlejohn*, 795 F.3d at 319 (citation omitted)); *see also Donnelly*, 691 F.3d at 152 (causation can be shown through "very close" temporal proximity).

Defendants solely argue that Plaintiff has not alleged the third and fourth element of a retaliation claim: adverse action and a plausible connection between his approved FMLA leave from December 27, 2021 to February 3, 2022 and any adverse action. Dkt. No. 61 at 22. Plaintiff alleges that following his return from FMLA leave, he was subject to increased scrutiny of his hours and attendance, informal and formal complaints filed by Desai, a negative performance review, and disciplinary charges. AC ¶¶ 49, 62, 64, 73–74. Plaintiff argues that these actions following his leave raise an inference of retaliatory intent. Dkt. No. 63 at 17–18. The Court first addresses whether Plaintiff has alleged an adverse action and then whether Plaintiff has alleged a plausible inference of retaliatory intent.

Plaintiff's allegations that he was subject to increased scrutiny and monitoring from Desai are insufficient to plead an adverse action. "Increased responsibilities and excessive scrutiny, without more, do not constitute an adverse employment action." *Workneh v. Pall Corp.*, 897 F. Supp. 2d 121, 135 (E.D.N.Y. 2012) (citing *Dauer v. Verizon Commc'ns Inc.*, 613 F. Supp. 2d 446, 461 (S.D.N.Y. 2009)) (Title VII); *see Daniels v. Conn.*, 2015 WL 4886455, at *17 (D. Conn. Aug. 17, 2015) ("excessive scrutiny and criticism" are not adverse employment

actions) (Title VII). Desai's conduct in documenting Plaintiff's hours, emailing him during the day, checking in on his performance, and rejecting timesheets for correction do not amount to more than close monitoring or scrutiny. *See Workneh*, 897 F. Supp. 2d at 135 (meetings to scrutinize job performance and schedule, increased scrutiny of corporate charge card, and extensive audits of workday do not constitute adverse actions for retaliation claim); *Doran v. N.Y.S. Dep't of Health Off. of Medicaid Inspector Gen.*, 2017 WL 836027, at *14 (S.D.N.Y. Mar. 2, 2017) (random checks of work, tracking movement around office, and accusation of time theft are forms of excessive scrutiny and close monitoring that do not constitute adverse actions). The FMLA "does not prohibit employers from monitoring [an] employee's attendance or investigating whether employees have engaged in misconduct." *Peterson v. Long Island R. Co.*, 2012 WL 2319238, at *8 (E.D.N.Y. June 19, 2012).

As to Plaintiff's allegations that Desai "began filing informal and formal internal complaints to DOF Labor Relations, Chief of Staff, the Chief Information Officer, Department of Finance's General Counsel, Human Resources and . . . Timekeeping regarding [his] employment with the city," AC ¶ 62, such allegations are too vague to support a plausible inference that these complaints are "likely to dissuade a reasonable worker" from taking FMLA leave. *See Millea*, 658 F.3d at 164. Such conduct could be akin to disciplinary action, which could constitute adverse action. *See id.* at 165 (formal "Notice of Discipline" issued by employer and placed in plaintiff's file constituted adverse action). But Plaintiff does not allege that they constituted anything more than increased monitoring or scrutiny which could not constitute retaliatory conduct. *See* AC ¶ 68 (allegation that Desai inquired with Labor Relations whether Plaintiff's possession of a personal laptop in the office violated any policies). Plaintiff does not provide any allegations as to the nature of these complaints or any impact such complaints had on him.

Moreover, beyond alleging that they "began" in March 2022, *id.* ¶ 62, Plaintiff does not allege the timing or amount of complaints. That Desai complained about Plaintiff is insufficient without more to allege an adverse action absent any indication as to the impact of these complaints.

Plaintiff has, however, alleged adverse action in support of a retaliation claim through his negative performance evaluation and disciplinary charges. Negative evaluations may constitute adverse action for purposes of a retaliation claim. *Zelnik v. Fashion Inst. of Tech.*, 464 F.3d 217, 226 (2d Cir. 2006) ("Adverse employment actions may include negative evaluation letters."); *Lovejoy-Wilson*, 263 F.3d at 223 (noting "negative evaluation letters" as an example of adverse employment actions under retaliation claim (quoting *Morris v. Lindau*, 196 F.3d 102, 110 (2d Cir. 1999))); *see, e.g.*, *Spaulding v. N.Y.C. Dep't of Educ.*, 2015 WL 12645530, at *43 (E.D.N.Y. Feb. 19, 2023) (plaintiff received "at least two unsatisfactory formal observation reports; five unsatisfactory informal observation reports; and ten negative letters-to-file" and a factfinder could conclude that "such a quantity of negative evaluations would dissuade a reasonable person from complaining of unlawful activity"); *Weber v. City of New York*, 973 F. Supp. 2d 227, 268 (E.D.N.Y. Sept. 29, 2013) (unsatisfactory performance evaluations after plaintiff filed human rights complaint constituted an adverse employment action for retaliation purposes); *Palmese v .N.Y.C. Dep't of Educ.*, 2026 WL 265962, at *7 (E.D.N.Y. Feb. 2, 2026) ("barrage of disciplinary letters and poor performance ratings" following return from FMLA leave constitute adverse action). Similarly, while the initiation of disciplinary action is insufficient to allege adverse action for a discrimination claim, it suffices to allege adverse action for the purposes of a retaliation claim. *See Alvarado v. United Hospice, Inc.*, 631 F. Supp. 3d 89, 118 (S.D.N.Y. 2022) ("[T]he filing of disciplinary charges . . . does constitute an adverse action for purposes of

[plaintiff's] retaliation claim."); *Clarke v. N.Y.C. Dep't of Educ.*, 2021 WL 123358, at *9 (E.D.N.Y. Jan. 13, 2021) ("In the context of a retaliation claim, 'the institution of disciplinary proceedings is sufficient . . . to constitute an adverse employment decision.'" (quoting *Skehan v. Vill. of Mamaroneck*, 465 F.3d 96, 106 (2d Cir. 2006))).

Plaintiff has not, however, alleged an inference of retaliatory intent as to that evaluation or as to the later disciplinary charges. The almost five-month gap between the end of Plaintiff's FMLA leave on February 3, 2022 and his negative performance review on June 26, 2022, and the eight-month gap between the end of leave and the disciplinary charges on October 31, 2022, are too attenuated to support an inference of retaliatory intent based on temporal proximity alone. *See O'Reilly v. Consol. Edison Co. of N.Y.*, 173 F. App'x 20, 22 (2d Cir. 2006) (summary order) (three-month gap between FMLA leave and termination "is not sufficient to give rise to an inference of retaliation in light of the additional leave time" available under defendant's policy and of which plaintiff availed herself); *Dearden v. GlaxoSmithKline LLC*, 2017 WL 4084049, at *9 (S.D.N.Y. Sept. 14, 2017) (four-month gap between return from FMLA leave and termination "militates against an inference of causation" (internal quotation marks and citation omitted)); *Kim v. Goldberg, Weprin, Finkel Goldstein, LLP*, 862 F. Supp. 2d 311, 319 (S.D.N.Y. 2012) (four-month gap between leave and termination "precludes the Court from presuming that there was a causal connection based on temporal proximity alone").

Absent temporal proximity, Plaintiff must allege either the disparate treatment of other employees who engaged in similar conduct or allege direct evidence of retaliatory animus. *See Natofsky*, 921 F.3d at 348. "[T]o survive a motion to dismiss for lack of causation, 'the plaintiff's pleading need not clearly establish that the defendant harbored retaliatory intent. It is sufficient to allege facts which could reasonably support an inference to that effect.'" *Stajic v.*

*City of New York*, 214 F. Supp. 3d 230, 236 (S.D.N.Y. 2016) (quoting *Posr v. Court Officer Shield No. 207*, 180 F.3d 409, 418 (2d Cir. 1999)). Plaintiff has not alleged the disparate treatment of other employees who engaged in similar conduct. In contrast, Plaintiff's proposed comparator as to his Title VII claims, Voloshina, took a seven-month leave of absence close in time to Plaintiff's request for leave and Plaintiff alleges that she was not subject to any disciplinary claims or similar negative treatment. AC ¶¶ 119, 129–30. Such allegations support an inference that Plaintiff's receipt of a negative performance review and disciplinary charges were due to some factor other than his decision to take FMLA leave.

Plaintiff has not alleged direct evidence of retaliatory animus so as to support a plausible inference of retaliatory intent as to his negative performance evaluation or disciplinary charges. Plaintiff alleges that, following his return from FMLA leave, in March 2022 Paskus questioned his decision to take additional unpaid leave and told him that his job may be in jeopardy if he does so, *id.* ¶ 63, and that DOF's General Counsel, Ari Lieberman, stated in a meeting with Desai in March 2022 that they have "multiple things they can charge [Plaintiff] on" regarding disciplinary misconduct, *id.* ¶ 64.[12] Plaintiff's allegations may support a plausible inference that leadership at DOF harbored frustration toward Plaintiff and may have even sought an avenue to terminate his employment. However, these allegations do not support the inference that such frustration stemmed from Plaintiff's decision to take *FMLA* leave. Plaintiff alleges no retaliatory action during his FMLA leave, immediately following his return, or otherwise prior to his

[12] Plaintiff additionally alleges that in May 2022, a former DOF employee assisted Plaintiff with applying for a different role with the City and stated, "I want to try to help you before they try to do anything negative to you." AC ¶¶ 102–03. Comments by an individual with no involvement in the alleged adverse action provide weak evidence of retaliatory animus. *Cf. Rose v. N.Y.C. Bd. of Educ.*, 257 F.3d 156, 162 (2d Cir. 2001) (comments made to plaintiff "on more than one occasion by her immediate supervisor, who had enormous influence in the decision-making process" supported inference of discriminatory motive).

discussion with Visscher about taking additional leave. *See generally id.* ¶¶ 27–43. Instead, Plaintiff specifically alleges that following that discussion about additional leave, the scrutiny "turned up" and Desai "began" closely monitoring his attendance. *Id.* ¶¶ 47–49; *see id.* ¶ 127 (Plaintiff alleging that he believed his performance review was "in retaliation to me coming back from PFA/FMLA and deciding to take approved unpaid childcare leave of absence"). Paskus's statements about the risk of taking childcare leave, made after Plaintiff completed FMLA leave, similarly can only be interpreted to apply to Plaintiff's decision to take additional leave. Cautioning Plaintiff about a decision to take future leave does not support an inference of retaliation as to his decision to take prior leave. Plaintiff has not plausibly alleged that Defendants sought to retaliate against his exercise of FMLA rights through allegations that Defendants sought to dissuade Plaintiff from taking additional leave. *Cf. Riisna v. Am. Broadcasting Co., Inc.*, 219 F. Supp. 2d 568, 571 (S.D.N.Y. 2002) (plaintiff provided direct evidence of retaliatory animus where email stated that plaintiff was removed from project following EEOC complaint because company precludes individuals who are suing them from project); *see also Joseph v. Marco Polo Network, Inc.*, 2010 WL 4513298, at *18 (S.D.N.Y. Nov. 10, 2010) (an "intervening event between the protected activity and the adverse employment action . . . may defeat the inference of causation").

Plaintiff's claims of interference and retaliation under the FMLA are therefore dismissed.

## VII. Claims Under Section 1983

Section 1983 provides that an action may be maintained against a "person" who has deprived another of rights independently secured by the "Constitution and laws." 42 U.S.C. § 1983. To successfully plead a Section 1983 claim, a plaintiff must allege two elements. First, "the conduct complained of must have been committed by a person acting under color of state law." *Pitchell v. Callan*, 13 F.3d 545, 547 (2d Cir. 1994). Second, "the conduct complained of

must have deprived a person of rights, privileges or immunities secured by the Constitution or laws of the United States." *Id.*; *accord Razzoli v. ASR Xpress*, 2026 WL 1492960, at *5 (S.D.N.Y. May 28, 2026); *Abadi v. Am. Airlines, Inc.*, 2024 WL 1346437, at *18 (S.D.N.Y. Mar. 29, 2024).

Plaintiff brings two claims that Defendants violated his constitutional rights: (1) Defendants retaliated against him for engaging in conduct protected by the First Amendment and (2) Defendants violated his Fourth Amendment rights when Visscher and Desai downloaded back-up files from Plaintiff's work computer that included his personal documents. Defendants move to dismiss both claims for failure to allege a constitutional violation and failure to allege municipal liability. Dkt. No. 61 at 25–26.

### A. First Amendment Retaliation

To state a *prima facie* case for First Amendment retaliation under Section 1983, a plaintiff must show (1) that the speech or conduct at issue was protected, (2) that the protected speech caused defendant to take adverse action against the plaintiff, and (3) that the adverse action caused plaintiff injury. *See Shara v. Maine-Endwell Cent. Sch. Dist.*, 46 F.4th 77, 82 (2d Cir. 2022). "[A]s a general matter the First Amendment prohibits government officials from subjecting individuals to retaliatory actions for engaging in protected speech." *Nieves v. Bartlett*, 587 U.S. 391, 398 (2019) (internal citations omitted). A plaintiff may state a First Amendment claim where a government official takes "adverse action against someone based on that forbidden motive and non-retaliatory grounds are in fact insufficient to provoke the adverse consequences." *Id.* (internal citations omitted). A plaintiff must also establish a but-for causal connection between the government's retaliatory animus and the plaintiff's subsequent injury. *Id.* at 398–99; *see also Nat'l Rifle Assoc. of Am. v. Vullo*, 602 U.S. 175, 203 (2024) (Jackson, J., concurring). In other words, "a plaintiff pursuing a First Amendment retaliation claim must

show, among other things, that the government took an 'adverse action' in response to his speech that 'would not have been taken absent the retaliatory motive.'" *Houston Cmty. Coll. Sys. v. Wilson*, 595 U.S. 468, 477 (2022) (quoting *Nieves*, 587 U.S. at 399).

Plaintiff has not alleged that he engaged in protected conduct or speech. He first argues that DOF unlawfully infringed on his right to free speech by prohibiting him from "attending to personal matters that may arise from time to time during the workday." AC ¶ 245; *see also id.* ¶¶ 171–72 (alleging that it is an "unconstitutional infringement of [his] right to free speech" to discipline him for "us[ing] city time for family personal matters"). "A public employee's speech is entitled to constitutional protection only when it addresses a matter of legitimate public concern." *Isaac v. City of New York*, 701 F. Supp. 2d 477, 495 (S.D.N.Y. 2010) (citing *Morris v. Lindau*, 196 F.3d 102, 109–10 (2d Cir. 1999)). "When a public employee's speech is focused on personal matters, it is not considered to be a matter of public concern and the government, acting as an employer, has 'wide latitude to manage' the office." *Id.* (quoting *Connick v. Myers*, 461 U.S. 138, 147 (1983)). Plaintiff has specifically alleged that his speech pertained to "personal matters" and has provided no allegations as to the content of any speech or any support for the notion that such speech concerned "a matter of legitimate public concern." *Id.*; *see Hoyt v. Andreucci*, 433 F.3d 320, 330 (2d Cir. 2006) (to assess whether speech addresses a matter of public concern, courts "consider the content, form, and context of a given statement . . . [and] whether the speech relates to any matter of political, social, or other concern to the community" (internal quotation marks and citation omitted)). Plaintiff's conduct in addressing personal matters during the workday was not protected activity.

Plaintiff's second argument that DOF unlawfully infringed on his right to association by disciplining him for "his off-duty association with another organization for lawful economic

purposes" similarly does not support a claim that Plaintiff engaged in protected conduct. Dkt. No. 63 at 20. "'[F]reedom of association' protected by the First Amendment has been generally understood to encompass two quite different types of associational activity: choices to enter into and maintain certain intimate human relationships' and 'associat[ion] for the purpose of engaging in those activities protected by the First Amendment—speech, assembly, petition for the redress of grievances, and the exercise of religion.'" *Jacoby & Meyers, LLP v. Presiding Justices of the First, Second, Third, & Fourth Dep'ts*, 852 F.3d 178, 187–88 (2d Cir. 2017) (quoting *Roberts v. U.S. Jaycees*, 468 U.S. 609, 617, 618 (1984)). Association with a business for "lawful economic purposes" is not protected activity under the First Amendment.

Plaintiff's claim of First Amendment retaliation is dismissed for failure to allege protected activity.

### B. Fourth Amendment Violation

The Fourth Amendment "protects individuals from unreasonable searches and seizures conducted by the Government, even when the Government acts as an employer." *Nat'l Treasury Empls. Union v. Von Raab*, 489 U.S. 656, 665 (1989). "This constitutional protection covers the physical papers of public employees and also operates 'in the electronic sphere.'" *Zennamo v. Cnty. of Oneida*, 2026 WL 2056152, at *4 (2d Cir. July 26, 2026) (summary order) (quoting *City of Ontario v. Quon*, 560 U.S. 746, 760 (2010)).

"Searches and seizures by government employers or supervisors of the private property of their employees . . . are subject to the restraints of the Fourth Amendment." *O'Connor v. Ortega*, 480 U.S. 709, 715 (1987) (plurality opinion). Fourth Amendment rights are implicated only "when an expectation of privacy that society is prepared to consider reasonable is infringed." *United States v. Jacobsen*, 466 U.S. 109, 113 (1984); *accord O'Connor*, 480 U.S. at 715.

"Public employees' expectations of privacy in their offices, desks, and file cabinets, like similar expectations of employees in the private sector, may be reduced by virtue of actual office practices and procedures, or by legitimate regulation." *O'Connor*, 480 U.S. at 715. Where a government employer does not have "a general practice of routinely conducting searches of office computers" or does not otherwise "place[] [employee] on notice that he should have no expectation of privacy in the contents of his office computer," the employee may have a reasonable expectation of privacy in the contents of his work computer. *Leventhal v. Knapek*, 266 F.3d 64, 74 (2d Cir. 2001). In contrast, where government policy makes clear "that the computer was subject to search and monitoring" and warned users that the computers were subject to audit, the employee has no reasonable expectation of privacy in its contents. *Zennamo*, 2026 WL 2056152, at *5.

Even where a public employee has a reasonable expectation of privacy in their work computer, "[t]he 'special needs' of public employers may, however, allow them to dispense with the probable cause and warrant requirements when conducting workplace searches related to investigations of work-related misconduct." *Leventhal*, 266 F.3d at 73 (quoting *O'Connor*, 480 U.S. at 719–26); *see O'Connor*, 480 U.S. at 732 (Scalia, J., concurring). Similarly, there is a governmental interest in "the efficient and proper operation of the workplace" that may justify a public employer's "noninvestigatory work-related intrusions." *O'Connor*, 480 U.S. at 723. "[P]ublic employers must be given wide latitude to enter employee offices" for such non-investigatory reasons, such as "finding a file or piece of office correspondence" or completing "routine inventory" of state property. *Id.*

Determining whether a public employer's search is reasonable under the Fourth Amendment requires balancing the "nature and quality of the intrusion" against "the

governmental interest in the efficient and proper operation of the workplace." *Fowler v. N.Y.C. Dep't of Sanitation*, 704 F. Supp. 1264, 1273 (S.D.N.Y. 1989) (first quoting *United States v. Place*, 462 U.S. 696, 703 (1983); and then quoting *O'Connor*, 480 U.S. at 723). A search pursuant to a non-investigatory work-related purpose will usually be "justified at its inception." *U.S. v. Reilly*, 2002 WL 1163572, at *3 (S.D.N.Y. June 3, 2002) (quoting *O'Connor*, 480 U.S. at 726). To be reasonable in scope, "'the measures adopted [must be] reasonably related to the objectives of the search and not excessively intrusive in light of' the circumstances giving rise to the search." *Quon*, 560 U.S. at 761 (quoting *O'Connor*, 480 U.S. at 725–26).

Plaintiff alleges that Defendants accessed the files on his work computer, including personal files stored therein, in order to "back up" the computer in case Plaintiff quit suddenly. AC ¶¶ 99–102. Whether Plaintiff had a reasonable expectation of privacy in the personal files he stored on his work computer is a fact-dependent inquiry. *Compare Leventhal*, 266 F.3d at 74 (plaintiff had reasonable expectation of privacy in office computer where he "occupied a private office with a door" and "had exclusive use of the desk, filing cabinet, and computer" and his public employer did not routinely search computers or place employees on notice of such searches), *with Zennamo*, 2026 WL 2056152, at *5 (no expectation of privacy where employer made clear that computer was subject to search and monitoring). Plaintiff has alleged that he worked in a cubicle, AC ¶ 54, but otherwise provides no allegations as to whether he had exclusive access to his computer or whether he had notice of any DOF computer privacy policies. Such allegations are within his knowledge. *Cf. Foli v. Metro-N. R.R.*, 2025 WL 965279, at *5 (S.D.N.Y. Mar. 31, 2025) (denying motion to dismiss Fourth Amendment claim where plaintiff alleged a reasonable expectation of privacy but, absent allegation as to basis of defendant's searches, "there is no way to determine whether they were justified at their inception

or reasonable in scope"). Absent any allegations as to Plaintiff's work computer, the Court cannot determine whether Plaintiff has alleged that Desai's search infringed a reasonable expectation of privacy.

Plaintiff's claim of a Fourth Amendment violation is therefore dismissed.

### C. Municipal Liability

Plaintiff brings his Section 1983 claims against the Individual Defendants as well as DOF. Defendants argue that DOF cannot be held liable because Plaintiff has failed to allege either a constitutional violation or that DOF had a policy, custom, or practice that contributed to the denial of his request. Dkt. No. 61 at 26.

To plead Section 1983 claims against a municipality, a plaintiff must allege: "(1) actions taken under color of law; (2) deprivations of a constitutional or statutory right; (3) causation; (4) damages; and (5) that an official policy of the municipality caused the constitutional injury." *Roe v. City of Waterbury*, 542 F.3d 31, 36 (2d Cir. 2008); *see Monell v. Dep't of Social Servs.*, 436 U.S. 658, 690–91 (1978). "A plaintiff may satisfy the 'policy or custom' requirement by alleging one of the following: '(1) a formal policy officially endorsed by the municipality; (2) actions taken by government officials responsible for establishing the municipal policies that caused the particular deprivation in question; (3) a practice so consistent and widespread that, although not expressly authorized, constitutes a custom or usage of which a supervising policy-maker must have been aware; or (4) a failure by policymakers to provide adequate training or supervision to subordinates to such an extent that it amounts to deliberate indifference to the rights of those who come into contact with the municipal employees.'" *Johnson v. Paul*, 2018 WL 2305657, at *3 (S.D.N.Y. May 21, 2018) (quoting *Brandon v. City of New York*, 705 F. Supp. 2d 261, 276–77 (S.D.N.Y. 2010)).

Plaintiff's *Monell* claim fails at the threshold. He does not allege a constitutional violation. *See, e.g.*, *Segal v. City of New York*, 459 F.3d 207, 219 (2d Cir. 2006). Moreover, Plaintiff's allegations concern "a single incident . . . involv[ing] only actors below the policy-making level" and thus "does not suffice to show a municipal policy." *DeCarlo v. Fry*, 141 F.3d 56, 61 (2d Cir. 1998) (internal citation omitted); *accord Staboleski v. City of New York*, 2021 WL 796616, at *5 (S.D.N.Y. Mar. 1, 2021).

## VIII. Supplemental Jurisdiction

Plaintiff brings claims pursuant to the NYSHRL, NYCHRL, PFL, and Section 75 of the Civil Service Law. Given the dismissal of Plaintiff's claims that arise under federal law, the Court declines to exercise supplemental jurisdiction over Plaintiff's claims under New York law. *See Shi Ming Chen v. Hunan Manor Enter., Inc.*, 2018 WL 1166626, at *9 n.4 (S.D.N.Y. Feb. 15, 2018) ("Having dismissed the only claims against Moving Defendants over which it has original jurisdiction, this Court declines to exercise supplemental jurisdiction over the remaining state and common law claims at this early stage in the litigation."); *Cantey v. Ctr. for Emp. Opportunities*, 2026 WL 923844, at *12 (S.D.N.Y. Apr. 6, 2026).[13]

## CONCLUSION

Defendants' motion to dismiss is GRANTED. Plaintiff's claims of discrimination and retaliation under the ADA, First Amendment retaliation, and claims under Title VII against the Individual Defendants are dismissed with prejudice because "not even a liberal reading of the

[13] Plaintiff is advised that, under 28 U.S.C. § 1367(d), the period of limitations for his claims under state and local law was tolled while the claims were pending in this Court and will be tolled for a period of 30 days thereafter (unless the applicable state law provides for a longer tolling period).

complaint gives any indication that a valid claim might be stated." *Teman v. Zeldes Neelde Cooper, LLP*, 2025 WL 3778680, at *14 (S.D.N.Y. Dec. 31, 2025).

Plaintiff's remaining claims under Title VII, the FMLA, and Section 1983 for violation of the Fourth Amendment are dismissed without prejudice. "[L]eave to amend should be freely given, and a *pro se* litigant in particular should be afforded every reasonable opportunity to demonstrate that he has a valid claim." *Nielsen v. Rabin*, 746 F.3d 58, 62 (2d Cir. 2014) (internal quotation marks and citation omitted). As the Second Circuit has stated, "[a] pro se complaint should not be dismissed without the Court's granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Grullon v. City of New Haven*, 720 F.3d 133, 139 (2d Cir. 2013) (internal quotation marks, citations, and alterations omitted); *accord Cagle v. Weill Cornell Med.*, 680 F. Supp. 3d 428, 439 (S.D.N.Y. 2023). The Court declines to exercise supplemental jurisdiction over Plaintiff's state law claims.

Plaintiff is granted leave to file a second amended complaint limited to repleading his claims of discrimination and hostile work environment under Title VII, interference and retaliation under the FMLA, violation of the Fourth Amendment under Section 1983, and claims under New York law. Plaintiff shall file any second amended complaint within sixty days of this Opinion and Order. In the absence of a timely filed second amended complaint, the Court will enter judgment and close this case.

The Clerk of Court is respectfully directed to close Dkt. No. 59.

SO ORDERED.

Dated: August 24, 2026
New York, New York

LEWIS J. LIMAN
United States District Judge